*1022 OPINION OF THE COURT
Donald J. Corbett, Jr., J.
Claimant Victor J. Di Maio, a veteran of the Viet Nam War, alleges that the New York State Division of Veterans’ Affairs (SDVA) committed a fraud upon him by, inter alia, deliberately misplacing Di Maio’s application for veteran’s disability compensation benefits for a "service-connected” disability and misadvising claimant about the status of this application. This fraud, it is alleged, caused claimant to be precluded from and deprived of such benefits for some 15 years.
In 1962 claimant, having only a tenth grade education, enlisted in the Army National Guard and, in 1964, enlisted in the United States Marine Corps. He was trained in counter-guerrilla warfare and was assigned to an infantry combat unit in Viet Nam. His first years in the military were very successful and he advanced rapidly in rank. He was eventually assigned to a Special Operations Group Team in which his duties involved actions against civilians, including women and children, behind enemy lines. As a result of these experiences, claimant developed what is now termed posttraumatic stress syndrome, a medically recognized disability.
After his Viet Nam duties, he became withdrawn, suffered flashbacks and nightmares, started drinking heavily (becoming an alcoholic), and attempted suicide. He was granted temporary leave to return to his home in Gloversville, New York, and on two occasions was absent without leave. He was sent to St. Albans Naval Hospital in Queens, New York, for psychiatric treatment, leaving in March 1968. His separation from service was March 11, 1968. Finally, he was declared unfit and unsuitable for further military service and received an honorable discharge from the Marine Corps on June 14, 1968.
Claimant returned to Gloversville, married, and is now the father of two children. His family continues to live in Gloversville. He is currently classified as being 70% disabled with the United States Veterans’ Administration and has been receiving disability compensation benefits since 1983. Inasmuch as no application for such benefits was filed within one year of claimant’s separation from the military service, here March 11, 1968, retroactive benefits were not available from the Veterans’ Administration (VA). Claimant alleges the failure to have timely filed this application is the result of a fraud and deception practiced upon him by a veterans’ counselor employed by the SDVA, and he seeks, among other things, recompense for the many years of lost benefits.
*1023 On August 12, 1968, claimant met with Bruce Hess, the SDVA counselor described above, in Johnstown, New York, for the purpose of applying for disability compensation benefits because of his "nervous disorder”. Hess was supposed to help veterans with their applications, advocate on their behalf, and generally assist veterans in their affairs with the VA (Executive Law § 358 [1]). Claimant gave to Hess a letter dated April 4, 1968, from Adjudication Officer Grody of the VA which advised that claimant’s application for vocational rehabilitation was rejected because he "[did] not have a disability incurred in or aggravated by service”. In other words, the VA thought claimant’s disability was not service connected. Claimant also gave to Hess another letter from the VA dated April 16, 1968, which contained an application form (form 526) for benefits. Since claimant was confused regarding which applications had been filed and what they meant, Hess wrote on the following day, August 13, 1968, on claimant’s behalf to one Grody of the VA for a status report regarding any disability compensation application, if one had been filed. Grody responded by letter dated August 30, 1968, to claimant advising him of Hess’s inquiry and enclosing a blank form 526 for completion and submission to the VA.
At the meeting of August 12, 1968, Hess also advised claimant to obtain a doctor’s statement, as well as letters from claimant’s employer, family, friends and fellow servicemen, regarding the nature of claimant’s disability. All of this was to have been submitted to the VA in support of an application for disability compensation benefits. Clearly both Hess and claimant were confused at this time as to whether a form 526 had been previously filed. Claimant thereafter also executed a power of attorney authorizing the Veterans of Foreign Wars (VFW) to be his accredited representative before the VA.
Claimant returned to see Hess on October 4, 1968, bringing with him a statement from claimant’s personal family physician, Doctor D’Errico, who had treated him since childhood. Since this statement in Hess’s opinion was not strong enough to show a service-connected disability, Hess made arrangements for claimant to see the psychiatrist in residence at the Fulton County Mental Health Department, which was located down the hall from Hess’s office. Claimant did not appear, missed all appointments, and submitted no further documentation to Hess. On October 7, 1968, Hess wrote to one Julian Mason of the VFW (claimant’s designated accredited representative) on claimant’s behalf requesting assistance in determin *1024 ing the VA’s position on the service connection of claimant’s nervous disorder. Mason responded on October 28, 1968, advising that the VA had determined that claimant had an emotionally unstable personality, preexisting his service, and expressing surprise at this finding, particularly after 3Vz years of service. Mason also noted that no form 526 was on file and suggested that claimant might well be advised to file one which noted all earlier treatments for his disabilities.
On October 30, 1968, Hess wrote to claimant, requesting that claimant come in to discuss the communication noted above and to take steps to follow through. Claimant alleges that he telephoned Hess in response to this letter but that Hess communicated that the disability claim (form 526) had been filed and denied, and that claimant had no viable claim. Hess has no recollection and/or file notes of such conversation, nor did claimant offer any documentary proof of the same.
Claimant did not return to see Hess again until 10 months later in August 1969 for consultation on another matter, and some nine more times between 1969 and 1976. It is alleged that Hess continued to represent to claimant that no viable claim existed as the prior claim had been denied. Concededly, Hess made no further attempts to file a disability claim or to have claimant secure the previously requested documentation.
Finally, in 1983, after Hess retired, claimant met with a new veterans’ counselor, Hill, seeking advice on real property tax exemptions. Hill reviewed claimant’s file, saw that there was a blank form 526, and concluded that no disability claim had ever been filed. Hill, believing that a claim should have been filed on claimant’s behalf in 1968, prepared an application for claimant’s signature and submitted it to the VA. It is important to note here that thereafter the VA, by letter dated May 5, 1983, requested medical and/or lay evidence describing the diagnosis/manifestations of the claimed posttraumatic stress disorder. It appears that this is the same information that would have been necessary and was requested by Hess in 1968 had form 526 been filed at that time. Claimant submitted the requested information and was found to be 50% disabled (shortly thereafter raised to 70%) for a service-connected disability. Retroactive benefits were unavailable as application must be made within one year of separation. Argument that a form 526 application had been timely filed but lost by the VA was unavailing, as the VA had no record thereof.
*1025 The gravamen of the instant claim is that Hess led claimant to believe that the disability compensation benefits application had been filed in 1968 and was denied by the VA. Claimant contends that he relied upon Hess’s communication to that effect, and ceased any further efforts to secure disability benefits until 1983, when Hill instigated the filing of the successful application.
The elements of an action to recover for fraud are "representations, falsity, scienter, deception and injury” (Arthur v Griswold, 55 NY 400, 410; Jo Ann Homes v Dworetz, 25 NY2d 112). The burden of proof is met by clear and convincing evidence, a higher standard than a fair preponderance of the evidence (Simcuski v Saeli, 44 NY2d 442). Claimant raises a threshold issue urging that the burden of proof herein should shift to the defendant to demonstrate the absence of fraud, because the fraud alleged is in the context of a fiduciary or other confidential relationship where one party possesses a superior knowledge or dominant or controlling force over the other (see, 24 NY Jur, Fraud and Deceit, § 278). The burden will be shifted whenever the one side possesses superior knowledge derived from a fiduciary relation or from an overmastering influence (Matter of Gordon v Bialystoker Center & Bikur Cholim, 45 NY2d 692, 699). The law has recognized several such fiduciary relationships — attorney and client, guardian and ward, trustee and cestui que trust, perhaps physician and patient, and nursing home and hospital patient (Cowee v Cornell, 75 NY 91, 100; Matter of Gordon v Bialystoker Center & Bikur Cholim, supra), but not a social worker and client relationship (Hector M. v Commissioner of Social Servs., 102 Misc 2d 676, 683). Broadly stated, a fiduciary relationship is one founded upon trust or confidence reposed by one person in the integrity and fidelity of another, and embraces both technical fiduciary relations and those informal relations which exist when one man trusts in and relies upon another (Penato v George, 52 AD2d 939, 942, mot to dismiss appeal denied 41 NY2d 839, appeals dismissed 42 NY2d 908). Neither party may exert influence or pressure upon the other or take selfish advantage of the trust in such a way as to benefit himself or prejudice the other (Mobil Oil Corp. v Rubenfeld, 72 Misc 2d 392, 399-400, affd 77 Misc 2d 962, revd on other grounds 48 AD2d 428).
Thus in this context, claimant urges that I enshroud the veteran/veterans’ counselor relationship within this protective umbrella. He argues with some persuasion the claimant con- *1026 tided in, trusted and relied upon Hess and that since he was in such a commanding, powerful and fiduciary relation to claimant, the burden of proof has shifted. Claimant having just separated from the service, knew little or probably nothing about veteran’s benefits and was suffering from a psychiatric disability at the time.
I have carefully considered this question and find that the veteran/counselor relationship here was not so one-sided or overmastering as to warrant the shifting of the burden of proof. Granting that claimant was suffering from a psychiatric disability or condition at the time,* the nature of the relationship here, that is, where the counselor’s duties consisting primarily of no more than informing and assisting the veteran in obtaining benefits and other services (Executive Law § 358 [1]), did not find claimant in so weakened and unequal a position as to be unfairly taken advantage of. While some intimacy, reliance and dependence existed, they were not so great as to create a fiduciary relationship. It cannot be said that deception was practiced, that undue influence was used, or that all was not fair, open and voluntary (Cowee v Cornell, 75 NY 91, 99-100, supra). Accordingly, the burden of proving the "five fingers of fraud” (2 NY PJI 78 [Supp]) remains with claimant.
The critical element here is scienter, or the intent to deceive, which claimant urges can be found from Hess’s putative acts of gross negligence (Marine Midland Bank v Russo Produce Co., 50 NY2d 31, 44). Of crucial importance in this is a telephone call allegedly made by claimant after Hess’s letter of October 30, 1968, in which claimant contends he was told that his claim for disability compensation benefits had been denied; obviously implying that form 526 had been filed. Claimant allegedly relied upon this information and did not return to see Hess or follow through on obtaining the requested documentation. Hess does not recollect such a conversation or any telephone call from claimant in response to the *1027 subject letter. This is the most telling testimonial dispute of the trial, as claimant’s version sets forth an actual knowing deception in which the intent to deceive obviously would have existed.
While Hess’s negligence may be inferred from his failure to follow up on the correspondence of October 30, 1968 to claimant, I cannot find from all the evidence that the communications from the alleged telephone call did occur. Negligence, whatever its grade, does not include a wrongful purpose and, therefore, is not fraud, but negligence if gross may be evidence from which defendant’s intent to deceive may be inferred (see generally, 2 NY PJI 81 [Supp]; Marine Midland Bank v Russo Produce Co., supra; Reno v Bull, 226 NY 546, 551; Moser v Spizzirro, 31 AD2d 537, affd 25 NY2d 941), or evidence to sustain an inference of fraud (Ultramares Corp. v Touche, 255 NY 170, 189).
Ordinary negligence differs from gross negligence generally in degree and not in kind (Prosser and Keeton, Torts § 34 [5th ed]); the difference is predominantly one of fact and not of law (see, 41 NY Jur, Negligence, § 27, at 40). Gross negligence encompasses a failure to exercise slight diligence, but less than a conscious indifference to the consequence.
I find it difficult, if not impossible, to elevate the minor actions or inactions by Hess, which I do find demonstrate some evidence of negligence, into demonstrations evincing a failure of even slight diligence. Whether I credit Hess’s alleged failure to follow up on his letter of October 30, 1968, or his alleged failure to make further inquiry during claimant’s subsequent visits commencing in August 1969, or opinion evidence from other veterans’ counselors that he should have filed the form in 1968 (although I note parenthetically that lay and medical evidence did accompany the form 526 which was submitted in early 1983, and that additional supportive documentation of the type that Hess had requested was required by the VA after the form’s original submission), or his direct admission in retrospect that had claimant returned in response to the letter of October 30, 1968, he would have filed the form 526 with the then existing documentation (of course, claimant would have had to return to the SDVA in any event to sign the form prior to its submission), I do not find the evidence suggests gross negligence. Claimant’s other suggested indicia of Hess’s gross negligence, even when accrued, do not sufficiently predominate. Hess may have been involved with some 5,000 veterans annually; and perhaps should have given *1028 greater attention and follow-through in light of claimant’s circumstances, but that only demonstrates guilt of ordinary negligence, and I cannot say in light of all the evidence before me that his conduct demonstrated gross negligence.
Furthermore, even were I to subscribe to the theory that claimant could recover if he could prove that the alleged wrongful concealment by Hess was an integral part of the negligent failure to perform a ministerial act, I find that claimant has failed to prove the existence of a ministerial act. There has not been established a ministerial act envisioning adherence to a governing rule or standard with the compulsory result (Tango v Tulevech, 61 NY2d 34, 41). Additionally, I find that evidence of an ordinary (as opposed to gross) negligent failure to perform a ministerial act is not sufficient to establish the cause of action for fraud herein.
Thus claimant has failed to prove one of the necessary elements of fraud, that is, scienter either by direct evidence or by sufficient inference from evidence of gross negligence.
In so finding, I am cognizant that an application for disability compensation benefits timely filed in 1968 probably would have been granted. It does little justice to claimant’s plight that he remained without appropriate benefits for some 15 years while suffering from posttraumatic stress syndrome incurred as a result of his service with the Marine Corps during the Viet Nam War. No gratuitous apologia from this court can alter that reality. Similarly, no sympathetic, yet legally unsupportable, remedy can be forthcoming. The facts here can support a cause of action for negligence (which was not timely filed), yet cannot be magnified to sustain a cause of action for fraud.
Accordingly, the State’s motion made at trial and upon which I reserved decision, to dismiss the action herein for failure to establish a prima facie case of fraud, is granted and the claim is dismissed. The clerk of the court is directed to enter judgment accordingly.

 Certainly, the claim at bar does not approach the overbearing circumstances apparent in Parker v Parker (66 AD2d 328) where the wife, without representation by counsel and after having been hospitalized in a psychiatric hospital for 5 of the preceding 11 months, signed a stipulation at the request of her husband, who was represented by an attorney, in which she relinquished sole custody of their child, conveyed her interest in the marital home, and waived her rights to support or alimony and to an attorney. There the court nullified the fraudulently obtained stipulation, clearly one-sided in favor of the husband who took advantage of his overmastering influence over his wife.