Diamantis **GIANNACOPOULOS,**
Plaintiff,

v.

**CREDIT SUISSE, and Robert E. Menasche, Defendants.**

**No. 96 Civ. 9062(CBM).**

United States District Court,
S.D. New York.

Feb. 26, 1999.

Verner Simon & Rocha, LLP, New York City, by Paul W. Verner, for plaintiff.

Paradise & Alberts LLP, New York City, by Allan N. Taffet, for defendants.

## OPINION GRANTING SUMMARY JUDGMENT

MOTLEY, District Judge.

Plaintiff Diamantis Giannacopoulos alleges that misrepresentations by defendant Robert E. Menasche, an officer of defendant Credit Suisse, induced him to provide financial backing for an ill-fated Nigerian oil venture. The defendants have moved for summary judgment, arguing that there is insufficient evidence for the fraud and negligence claims and that the negligence claims are time-barred. For the below reasons, the summary judgment motion is granted and the case is dismissed.

## I.  CASE BACKGROUND

Plaintiff Diamantis Giannacopoulos is a financier residing in Greece.  Defendant Credit Suisse is a bank under the laws of New York and defendant Robert E. Menasche is a vice-president of Credit Suisse in New York.  The link between the parties is that Mr. Giannacopoulos and Mr. Menasche each played a role in helping a proposed Nigerian oil venture procure financial backing.  The failure of that venture led to this dispute about Mr. Menasche's role in Mr. Giannacopoulos's decision to support the venture.

On November 30, 1992, Mr. Menasche assisted Way Refining–Ergis Intercambio Commercial y Industrial Oil Division ("Way" and "Ergis"), a joint venture of Way and Ergis, by writing a "letter of introduction" to potential financial backers of a proposed Way–Ergis oil venture in Nigeria.  The letter read as follows on Mr. Menasche's Credit Suisse letterhead:

November 30, 1992

To Whom It May Concern:

It is hereby a pleasure to introduce our dear friends and substantial clients, Way Refining – Ergis Intercambio Comercial y Industrial Oil Division.

Both companies recently joined together for the purpose of lifting and processing crude oil for the international market.

Ergis Oil Division is managed by Sheikh Faysal el Azem and Way Refining by David Fraser.  Both have extensive knowledge in the crude oil industry with excellent experience of operating their business in a profitable way in the eight figures and more.  We envision this joint operation with great prosperity for future liftings and processing of crude oil and we highly recommend Way – Ergis Oil Division.

The character of the above two gentlemen are without reproach.

Very truly yours,

[signature of "B. Menasche"]
Joint Pre–Trial Order ("JPTO"), Ex. 1.

After the proposed Way–Ergis joint venture fell through in December 1992, Ergis continued to pursue the Nigerian oil venture without Way.  In January 1993, Ergis reached agreement with two other companies, Interfina Limited ("Interfina") and Petraco Oil Company Limited ("Petraco").  Interfina brokered the deal in which Ergis would lift the oil from Nigeria for eventual sale by Petraco.  Later that month, the deal was in jeopardy when Ergis and Interfina each breached a contractual obligation to issue a $300,000 performance bond.  *See* JPTO at 2–3.

Jonathan Clegg, a British solicitor representing Petraco, enlisted Mr. Giannacopoulos, whom he knew as a wealthy businessman, to provide the $300,000 performance bond for Interfina.  The bond was in place for the four weeks ending March 31, 1993.  In exchange, Mr. Giannacopoulos received a $125,000 fee and an Ergis corporate guaranty indemnifying him for the $300,000 risk.  Mr. Giannacopoulos never spoke with any parties to the venture, nor anyone at Credit Suisse, but reviewed the Interfina–Petraco contract, the Petraco letter of credit, and various Ergis documents:  a corporate brochure; financial statements for a one-year period ending in April 1992;  documents reflecting Ergis's efforts to lift the oil from Nigeria; a letter from the Bank of Macau indicating that Ergis had eight-figure revenue;  and the letter of introduction Mr. Menasche wrote in November 1992.  *See* JPTO at 4–6.

By March 31, 1993, Ergis had failed to perform the initial step of lifting the oil from Nigeria.  For an additional fee of $25,000, Mr. Giannacopoulos agreed to extend the performance bond into April to allow Ergis more time.  Ergis failed to lift the oil during April, leaving Interfina unable to perform its end of the deal and leaving Mr. Giannacopoulos liable for the $300,000 bond guaranteeing Interfina's

performance. Ergis then failed to make good on its corporate guaranty to indemnify Mr. Giannacopoulos for his $300,000 loss. *See* JPTO at 6.

After unprofitable European legal proceedings against Ergis, Mr. Giannacopoulos filed this action against Credit Suisse and Mr. Menasche. On June 4, 1997, the court dismissed Mr. Giannacopoulos's RICO claims for failure to allege a pattern of racketeering activity. Because of the parties' diverse citizenship, the court retains diversity jurisdiction over the four state law counts: fraudulent misrepresentation (count I); gross negligence (count II); negligent supervision (count III); and common law fraud (count IV). Amended Compl. ¶¶ 17–35.

The central claim here is that Mr. Menasche's letter misrepresented the financial condition of Ergis. Mr. Menasche allegedly received a fee of $25,000 to write Ergis an unusually positive letter of introduction, which he knew to be false, so that a financier such as Mr. Giannacopoulos would support Ergis's Nigerian oil venture in reliance on a Credit Suisse recommendation. The letter's purported falsehoods include the claims that Way and Ergis were "dear friends and substantial clients" of Credit Suisse and were "operating their business in a profitable way in the eight figures and more." Mr. Giannacopoulos maintains that Credit Suisse is liable for Mr. Menasche's misdeeds as its corporate officer as well as for its negligent supervision and training of Mr. Menasche. *See* JPTO at 7–9.

## II. CONCLUSIONS OF LAW

### A. Limitations Period for Negligence Claims (counts II and III)

Mr. Giannacopoulos filed this action on November 29, 1996 and the state law claims in his amended pleading are deemed to be interposed at the same time as the claims in his original pleading under N.Y.C.P.L.R. § 203(f). The defendants argue that Mr. Giannacopoulos's claim ac-

crued when Petraco cashed Mr. Giannacopoulos's performance bond, on or about May 12, 1993. From that accrual date, the three-year limitations period for negligence claims of N.Y.C.P.L.R. § 214(4) would have ended in May 1996. Mr. Giannacopoulos counters that his claim did not accrue until January 10, 1994, when it became clear that Ergis would not honor its corporate guaranty to indemnify him:

> Ergis failed to lift the oil and, by April of 1993, the entire oil transaction had failed. The Performance Bond was cashed, but Ergis, in the spring of 1993, refused to honor its corporate guaranty to me. I made an attempt to collecting [sic] from Ergis but, by January of 1994, it became apparent to me that the letter of introduction was patently false.... It suddenly became quite clear that I had no hopes of being indemnified by Ergis on the cashed performance bond without resorting to legal action.

Giannacopoulos Certification ¶ 8. *See also* JPTO at 6.

In spring 1993, Ergis clearly breached its duty to Mr. Giannacopoulos if it "refused to honor its corporate guaranty" to him. The claim accrues from the injury, not from the post-injury point when the injured party sees "no hopes of being indemnified ... without resorting to legal action." The claim accrued in spring 1993 and the three-year negligence limitations period ended in spring 1996, barring Mr. Giannacopoulos's November 29, 1996 filing.

A later accrual date based on Mr. Giannacopoulos's claim of delayed discovery of the letter's falsity would not save his negligence claims. Under N.Y.C.P.L.R. § 203(g), "where the time within which an action must be commenced is computed from the time when facts were discovered or ... could with reasonable diligence have been discovered, ... the action must be commenced within two years." By this standard, the latest possible date of discovery would be in early 1994, on or soon after January 10, 1994, when Mr. Giannacopoulos admits knowing "that the letter of

introduction was patently false." A two-year period from early 1994 would end in early 1996, leaving Mr. Giannacopoulos's November 29, 1996 filing time-barred.

If any different § 203(g) accrual date is appropriate, it is an earlier one. Ergis's extensive troubles in spring 1993, when it failed to perform in a multi-party oil venture and refused to honor its corporate guaranty, could have led a reasonably diligent party to that venture to notice or discover the disconnect between the collapsing Ergis of spring 1993 and the profitable Ergis of Mr. Menasche's late 1992 letter. Reasonable diligence could have disclosed the truth about Ergis soon after these spring 1993 failures. The two-year limitations period then would end in mid–1995, well before the filing of this action.

Thus, all of Mr. Giannacopoulos's negligence claims are time-barred under either the § 214(4) negligence limitations period of three years from injury or the § 203(g) limitations period of two years from discovery of key facts. The court nevertheless will discuss why summary judgment is appropriate on the merits against all of the negligence and fraud claims.

## B. Summary Judgment Standards

The basic summary judgment standard is that "[u]ncertainty as to the true state of any material fact defeats the motion." *Gibson v. Am. Broad. Companies,* 892 F.2d 1128, 1132 (2d Cir.1989). The non-moving party's burden is to produce concrete evidence sufficient to establish a genuine unresolved material issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1114 (2d Cir.1988). The court then must view the facts in the light most favorable to the non-movant. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Gallo v. Prudential Residential Servs., Ltd. Partnership,* 22 F.3d 1219, 1224 (2d Cir.1994). The court neither weighs evidence nor re-solves material factual issues, but only determines whether, after adequate discovery, any such issues remain unresolved because a reasonable fact finder could decide for either party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Gibson,* 892 F.2d at 1132.

## C. Negligent Supervision (count III)

■ Mr. Giannacopoulos's only evidence of negligent supervision or training by Credit Suisse is its hiring of Mr. Menasche, who is "a patent liar," and then its "allowing the issuance of a letter" on Credit Suisse letterhead that was as improper as the disputed letter by Mr. Menasche. Pl.'s Mem. at 23. Even if a fact finder could deem the letter fraudulent, one act of fraud by a corporate officer, without more, does not prove a lack of care by the corporation. A lack of direct supervision here is not negligent because it seems reasonable for a corporation to allow a vice-president to perform unsupervised such tasks as writing letters of introduction. Summary judgment is appropriate against Mr. Giannacopoulos's negligent supervision claim because the evidence is insufficient to allow a finding that his injury resulted from Credit Suisse negligence in its supervision or training of Mr. Menasche.

## D. Gross Negligence (count II)

■ In New York, there is no cause of action for negligent misrepresentation absent a special relationship of trust and confidence between the parties. Mr. Giannacopoulos counters that he claims not negligent misrepresentation, but gross negligence and negligent supervision. He is correct that negligent supervision is a different tort than negligent misrepresentation. His gross negligence claim, however, to the extent that it is distinct from his negligent supervision claim, bases on the alleged misrepresentation by Mr. Menasche. In a misrepresentation action, gross negligence can allow an inference of

fraudulent intent. *See, e.g., Revlon, Inc. v. Carson Prods. Co.,* 602 F.Supp. 1071 (S.D.N.Y.1985), *aff'd,* 803 F.2d 676 (Fed. Cir.); *DiMaio v. State,* 135 Misc.2d 1021, 517 N.Y.S.2d 675 (Cl.Ct.1987). To the extent that a gross negligence claim based on misrepresentation is distinct from a fraud claim, however, it is an allegation of unintentional tortious misrepresentation subject to the standards for negligent misrepresentation actions.

A negligent misrepresentation plaintiff must prove that the misrepresentation occurred in a close relationship between plaintiff and defendant:

> before a party may recover in tort for pecuniary loss sustained as a result of another's negligent misrepresentations there must be a showing that there was either actual privity of contract between the parties or a relationship so close as to approach that of privity.

*Prudential Ins. Co. v. Dewey, Ballantine, Bushby, Palmer & Wood, et al.,* 80 N.Y.2d 377, 590 N.Y.S.2d 831, 833, 605 N.E.2d 318 (1992). In contrast, a fraudulent misrepresentation plaintiff need not prove such a relationship. *See Channel Master Corp. v. Aluminium Limited Sales, Inc.,* 4 N.Y.2d 403, 176 N.Y.S.2d 259, 263, 151 N.E.2d 833 (1958)

Mr. Giannacopoulos, not in "actual privity of contract" with the defendants, must prove "a relationship so close as to approach that of privity." In determining what kinds of relationships are sufficiently close to create liability for negligent misrepresentations, *Prudential Insurance* canvassed "the substantial body of decisional law delineating the boundaries of liability to parties not in privity," 590 N.Y.S.2d at 834, 605 N.E.2d 318, and held that:

> The opinion in *Credit Alliance* distilled the principles emerging from the prior case law and established three critical criteria for imposing liability: (1) an awareness by the maker of the statement that it is to be used for a particular purpose; (2) reliance by a known party

> on the statement in furtherance of that purpose; (3) some conduct by the maker of the statement linking it to the relying party and evidencing its understanding of that reliance.

*Id.* at 834–35, 605 N.E.2d 318 (citing *Credit Alliance Corp., et al. v. Arthur Andersen & Co., et al.,* 65 N.Y.2d 536, 493 N.Y.S.2d 435, 483 N.E.2d 110 (1985)).

■ Mr. Giannacopoulos's claim fails the requirement that a negligent misrepresentation claimant be linked to the defendant as a "known party" in "a relationship so close as to approach that of privity." Although Mr. Menasche did not know Mr. Giannacopoulos, his "to whom it may concern" letter was targeted at people like Mr. Giannacopoulos: wealthy financiers willing to risk their money on an oil venture. However, not all strangers generally qualified to respond to a negligent misrepresentation can sue based on their reliance on the misrepresentation.

■ Only specific circumstances allow a negligent misrepresentation suit by a plaintiff who was not directly in privity with the defendant. A qualifying "relationship so close as to approach that of privity" usually will feature triangular privity, in which plaintiff and defendant each were in privity with a third entity, and at least will require that the plaintiff be part of a group that was reasonably well-defined and known to the defendant. Illustrating both of these points, *White v. Guarente, et al.,* 43 N.Y.2d 356, 401 N.Y.S.2d 474, 372 N.E.2d 315 (1977), allowed a negligent misrepresentation action by individual members of a limited partnership against accountants who had contracted only with the partnership itself, not with the individual members. Because the parties had not contracted with each other directly, it was critical that the plaintiffs were a specific and known group of beneficiaries to the contract. "It was clear that the accountants' services were obtained to benefit the specific members of the partnership, 'a known group possessed

of vested rights, marked by a definable limit and made up of certain components.'" *Prudential Ins. Co.*, 590 N.Y.S.2d at 834, 605 N.E.2d 318 (quoting *White*, 401 N.Y.S.2d at 477, 372 N.E.2d 315).

Mr. Giannacopoulos was not a sufficiently known party, nor in a sufficiently close relationship, to Mr. Menasche and Credit Suisse for the court to protect his reliance on any negligent misrepresentations. Accordingly, summary judgment is appropriate against Mr. Giannacopoulos on his gross negligence claim based on misrepresentations by Mr. Menasche.

### E. Fraudulent Misrepresentation (count I) & Common Law Fraud (count IV)

"[I]n order to demonstrate fraud, plaintiffs must establish: the misrepresentation of a material fact; knowledge by the party making the misrepresentation that it was false when made; justifiable reliance upon the statement; and damages." *Abrahami v. UPC Constr. Co.*, 224 A.D.2d 231, 638 N.Y.S.2d 11, 13 (1st Dept.1996) (citations omitted). Fraudulent misrepresentation and common law fraud are not distinct claims here because the elements of common law fraud include misrepresentation, which is at the heart of any fraud claim by Mr. Giannacopoulos. The critical issue here is whether Mr. Giannacopoulos's reliance on Mr. Menasche's letter was justifiable in the sense of meriting legal protection.

The defendants argue that any reliance was not justifiable because the letter was three months old, addressed a different venture, and was too cursory to be a sufficient basis for reliance. The letter addressed only the defunct Way–Ergis venture and only Way–Ergis as an entity, the defendants maintain. In contrast, Mr. Giannacopoulos supported only the later Ergis–Interfina–Petraco venture and actually backed Interfina, not Ergis, with the performance bond. Mr. Giannacopoulos could have found more specific and current information about Ergis's finances, the defendants argue, but he instead conducted only a cursory inquiry that did not include an extensive look at current documents.

Mr. Giannacopoulos counters that three months is reasonably current for a glowing review of a company's general condition, especially because the letter was an unusually strong recommendation. Under customary European banking practices, such letters typically vouch for companies only regarding specific ventures and only based on specific experiences, Mr. Giannacopoulos asserts. He also maintains that the letter was not limited to Way–Ergis; rather, it explicitly vouched for Ergis and its principal, who issued Mr. Giannacopoulos the critical corporate guaranty for the Interfina bond and who were partners of Interfina necessary to the joint venture. Mr. Giannacopoulos defends the extent of his broader inquiry into Ergis, which included a review of documents such as bank records through April 1992 and a recent brochure.

■ Mr. Giannacopoulos could prove that the letter was a voucher not just for Way–Ergis, but for Ergis, on whose profitability Mr. Giannacopoulos relied in accepting Ergis's corporate guaranty. He also could prove that, under prevailing financial custom, the letter was an unusually strong endorsement from a major financial institution. Nevertheless, reliance on a recommendation, however understandable, is insufficiently justifiable to merit legal protection.

■ A party claiming fraudulent inducement to invest in a business must show that he or she made an independent inquiry into the available information, especially where the party is a sophisticated businessman like Mr. Giannacopoulos. *See, e.g., Abrahami v. UPC Constr. Co.*, 224 A.D.2d 231, 638 N.Y.S.2d 11 (1st Dept. 1996) (holding that sophisticated investors suing corporation and officers for fraud unjustifiably relied on financial statements overstating assets because investors had duty to appraise risks independently).

Even representations by the owner of the business are not enough to eliminate the duty to examine current financial statements and other information about the business. *See, e.g., Stuart Lipsky, P.C. v. Price*, 215 A.D.2d 102, 625 N.Y.S.2d 563, 564 (1st Dept.1995) (rejecting fraud action by buyer of law practice claiming misrepresentations of practice's size and viability because buyer "had the means available to ascertain the truth [and] nevertheless chose to rely solely upon the alleged oral representations without any effort to verify that information via financial statements"); *Rudnick v. Glendale Sys.*, 222 A.D.2d 572, 635 N.Y.S.2d 657, 658 (2d Dept.1995) (same for fraud claim of bakery business buyers who "had the means available to them by the exercise of ordinary intelligence to learn the facts underlying the alleged misrepresentations and nondisclosures ... [and] will not now be heard to complain that they were induced to enter into this contract by misrepresentations" (citations omitted)). The broad rule is that where parties have access to information that could expose a misrepresentation, courts will not find their reliance sufficiently justifiable to merit legal protection. *See, e.g., Compania Sud–Americana de Vapores, S.A. v. IBJ Schroder Bank & Trust*, 785 F.Supp. 411, 419 (S.D.N.Y. 1992); *Congress Financial Corp. v. John Morrell & Co.*, 790 F.Supp. 459, 471 (S.D.N.Y.1992).

■ This is not to say that Mr. Giannacopoulos was irrational to have relied on the apparent fact that Credit Suisse vouched for Ergis. Such behavior even may have been customary, as Mr. Giannacopoulos maintains. Custom is not always the legal standard of when the law protects reliance, however, in part because many customs envision some amount of risk and unprotected trust. We often rely on those we trust without question, recognizing that the trust leaves us vulnerable; we often act on insufficient information to seize fleeting opportunities that are worth the risk. Trust and risk entail vulnerability, even though they are customary practices; it is not always the custom to double-check everybody and everything. The custom of unprotected trust surely exists in this financial community just as it exists in everyday life. The standard for legal protection of reliance, however, is higher. Parties cannot demand judicial protection when they could have protected themselves with a reasonable inquiry into any misrepresented facts.

### III. CONCLUSION

The motion of defendants Credit Suisse and Robert E. Menasche for summary judgment against plaintiff Diamantis Giannacopoulos is granted because: (1) the negligence claims are time-barred; (2) there is insufficient evidence to support the negligent supervision claim; (3) the parties' relationship was insufficient to support a gross negligence claim of misrepresentation; and (4) the plaintiff investigated any misrepresented facts insufficiently to prove justifiable reliance. Summary judgment is granted against all claims and the case is dismissed.