■ Kenneth Abrahami et al., Respondents, v UPC Construction Co., Inc., et al., Defendants, and Heo Peh Lee, Appellant. [638 NYS2d 11] —Judgment, Supreme Court, New York County (Harold Tompkins, J.), entered October 21, 1994 which, after a non-jury trial, awarded plaintiffs the sum of $962,995.52, plus costs and disbursements, is unanimously reversed, on the law and the facts, without costs, the judgment is vacated, and the complaint is dismissed. The Clerk is directed to enter judgment dismissing and severing the action as to defendant-appellant herein.

Defendant-appellant Heo Peh Lee was an officer, director and shareholder of UPC Construction Co. ("UPC"), which was involved in the development of small-scale real estate projects. Plaintiffs' complaint alleges that in January 1989, defendant and several other individuals involved with UPC met with plaintiffs to discuss the investment of capital into the company. At that time, plaintiffs were furnished with copies of balance sheets and related financial statements of UPC concerning a ten-month period ending August 31, 1988 and a one-year period ending October 31,1988.

Plaintiffs maintain that at the meeting, defendant represented that: UPC had made a profit in each of the two periods; that UPC had a substantial amount of work orders on hand; that UPC's price structure was low compared to similar firms because of its non-union labor; and that if plaintiffs did not agree to invest that same day, another individual was ready to take their place immediately.

A second meeting was held on February 24, 1989, during which defendant and others allegedly furnished plaintiffs with the compiled balance sheet and related statements of income and cash flow of UPC as of January 31, 1989. At a third meeting held in defendant's office on or about February 28, 1989, defendant allegedly reiterated his representations concerning UPC's excellent business prospects. Plaintiffs assert that in reliance on the foregoing representations, plaintiffs invested a substantial amount of money in UPC.

Plaintiffs aver that the balance sheets and related financial

statements that were provided to them were false in that they substantially overstated the accounts receivable and the work UPC had in progress; that the accounts payable were substantially understated; and that buildings listed as fixed assets were not in fact owned by UPC. As a result, plaintiffs maintain that the net profit stated for the period ending January 31, 1989 was false; and that the balance as of October 31, 1988 showing a positive net worth was also false in that UPC actually had a deficit on that date. Plaintiffs' complaint interposed two causes of action, for fraud and money had and received, respectively, and sought $750,000 plus interest for out-of-pocket losses and $3,000,000 in punitive damages.

Justice Shirley Fingerhood, now retired, dismissed the cause of action sounding in fraud with respect to the other non-accountant defendants, which included other officers, directors and shareholders of UPC, pursuant to CPLR 3016 (b), and dismissed the cause of action for money had and received for failure to allege receipt of monies. We affirmed (176 AD2d 180) and plaintiffs settled with the accountant defendants and apparently waived their claims as to the non-appearing defendants, leaving Lee as the sole remaining defendant.

A non-jury trial was held before Justice Tompkins, immediately after which the trial court found:

"That the defendant misrepresented certain material existing facts in writing as well as oral as to the financial condition of UPV [sic] Construction Company. The assets, profits, retained earnings and capital account were substantially overstated to demonstrate the profitable company, when in fact the company was insolvent.

"The financial statements both in writing and orally made by defendant were false.

"The defendant intentionally made the false statements.

"The plaintiffs were justified in relying upon these false statements and did in fact rely upon these statements both in writing and orally."

The plaintiffs were damaged as follows:

"The plaintiff Kenneth Abrahami $330,000.00.

"The plaintiff Paul Chao $330,000.00.

"And the plaintiff Jules Frimet $40,000.00."

Defendant appeals and we now reverse.

It is well-settled that in order to demonstrate fraud, plaintiffs must establish: the misrepresentation of a material fact; knowledge by the party making the misrepresentation that it was

false when made; justifiable reliance upon the statement; and damages (*Chimento Co. v Banco Popular*, 208 AD2d 385; *Gouldsbury v Dan's Supreme Supermarket*, 154 AD2d 509, 510-511, *lv denied* 75 NY2d 701; *Brown v Lockwood*, 76 AD2d 721, 730).

Further, the burden of proving fraud at trial is one of clear and convincing evidence, and not mere preponderance (*Almap Holdings v Bank Leumi Trust Co.*, 196 AD2d 518, *lv denied* 83 NY2d 754; *Hudson Feather & Down Prods. v Lancer Clothing Corp.*, 128 AD2d 674, 675; *Orbit Holding Corp. v Anthony Hotel Corp.*, 121 AD2d 311, 314). This evidentiary standard demands "a high order of proof" (*Backer Mgt. Corp. v Acme Quilting Co.*, 46 NY2d 211, 220) and forbids the awarding of relief " ' "whenever the evidence is loose, equivocal or contradictory" ' "*(Backer Mgt. Corp. v Acme Quilting Co., supra*, at 220, quoting *Southard v Curley*, 134 NY 148, 151).

We are mindful that, upon appeal, the decision of the fact-finding court should not be disturbed unless it is obvious that the court's conclusions could not have been reached under any fair interpretation of the evidence, especially where the findings of fact rest, in large part, on the credibility of witnesses (*see, Thoreson v Penthouse Intl.*, 80 NY2d 490, 495, *rearg denied* 81 NY2d 835; *Claridge Gardens v Menotti*, 160 AD2d 544, 545). However, where the findings in a non-jury trial are based upon considerations other than the credibility of witnesses, such as documentary evidence, then the appellate court is equally empowered to draw inferences and make findings of fact based upon evidence in the record (*Northern Westchester Professional Park Assocs. v Town of Bedford*, 60 NY2d 492, 499; *Forum Ins. Co. v Worcester County Inst. for Sav.*, 219 AD2d 492; *Orbit Holding Corp. v Anthony Hotel Corp., supra*, at 315).

While it was well within the trial court's purview to conclude that the financial statements were false, we do find, however, that plaintiffs did not prove, by clear and convincing evidence, that defendant possessed the requisite fraudulent intent in that he knew, personally, that the various financial statements overstated UPC's assets, profits, retained earnings and capital. In order to show an intent to deceive, plaintiffs must establish that defendant knew, at the time they were made, that the representations were false (*Kountze v Kennedy*, 147 NY 124, 129; *Ministry of Christ Church v Mallia*, 148 AD2d 784, 786).

In the matter before us, plaintiffs have failed to produce credible evidence that defendant's reliance on the expertise of UPC's certified public accounting firm, which prepared the financial statements, and UPC's Vice-President of Finance (a

certified public accountant), who provided the financial figures, was other than in good faith. This is buttressed by the fact that there is no evidence that defendant was involved in the day-to-day management, operations or bookkeeping of UPC; and that defendant had no part in preparing the various financial statements, which is clear from the record. Since the mere negligent failure to acquire knowledge of the falsehood is not sufficient to demonstrate intent (*Marine Midland Bank v Russo Produce Co.*, 50 NY2d 31, 44; *see also, Jones v Freeman's Dairy*, 283 App Div 806), as corporate officers and directors are personally liable for fraud only where they personally participated in the misrepresentation or had actual knowledge of it (*People v Apple Health & Sports Clubs*, 80 NY2d 803, 807; *Marine Midland Bank v Russo Produce Co., supra*, at 44), we find the evidence insufficient to establish defendant possessed the requisite intent.

Moreover, we find that plaintiffs failed to establish, by clear and convincing evidence, justifiable reliance on the representations. Plaintiffs, who are all sophisticated businessmen, had a duty to exercise ordinary diligence and conduct an independent appraisal of the risk they were assuming (*First Nationwide Bank v 965 Amsterdam*, 212 AD2d 469, 471; *Stambovsky v Ackley*, 169 AD2d 254). " '[W]here a party has means available to him for discovering, "by the exercise of ordinary intelligence", the true nature of a transaction he is about to enter into, "he must make use of those means, or he will not be heard to complain that he was induced to enter into the transaction by misrepresentations" (*Schumaker v Mather*, 133 NY 590, 596 [1892])' " (*Ittleson v Lombardi*, 193 AD2d 374, 376, quoting *East End Owners Corp. v Roc-East End Assocs.*, 128 AD2d 366, 370-371).

In the matter at bar, plaintiffs clearly had the means available to them to ascertain UPC's financial condition. In addition, plaintiffs were put on notice of UPC's possible precarious financial condition, and the need to conduct an investigation, by the initial reporting of only $54 of cash on hand. Further, the March 15, 1989 memorandum entitled "Restructure and New Investment of UPC" specifically provided, and cautioned, that the entire transaction will "be subject to due diligence and audit by the new investor group." Accordingly, plaintiffs, from the information provided in the documents and financial statements made available, should have endeavored to conduct an audit, or some form of independent due diligence, with regard to the financial condition of UPC. Concur—Murphy, P. J., Wallach, Ross, Nardelli and Tom, JJ.