**BANQUE FRANCO–HELLENIQUE DE COMMERCE INTERNATIONAL ET MARITIME, S.A., Plaintiff–Counter–Defendant–Appellee,**

v.

**Orestes CHRISTOPHIDES, Defendant–Counter–Claimant–Appellant.**

No. 428, Docket 96–7443.

United States Court of Appeals, Second Circuit.

Argued Oct. 9, 1996.

Decided Jan. 24, 1997.

James J. Sabella, New York City (Andrew J. Maloney, Andrew W. Stern, Simon Raykher, Brown & Wood, LLP, of counsel), for Defendant–Counter–Claimant–Appellant.

Hector Torres, New York City (Michael C. Harwood, Ruth Ilan, Daniel B. Rosenthal, Kasowitz, Benson, Torres & Friedman, LLP, of counsel), for Plaintiff–Counter–Defendant–Appellee.

Before LUMBARD, OAKES, and MAHONEY,* Circuit Judges.

OAKES, Senior Circuit Judge:

This is an appeal from a decision of the United States District Court for the Southern District of New York, Leonard B. Sand, *Judge*, which granted judgment to plaintiff, Banque Franco–Hellenique de Commerce International et Maritime, S.A. ("the bank").[1] Plaintiff is a Greek banking corporation and defendant is a United States citizen residing in Connecticut. Following cross-motions for summary judgment, the district court, with the consent of the parties, treated the case as a trial to the court on a stipulated record. Defendant–Appellant Christophides raised many defenses. Although three of them gave the district court "pause," all were ultimately rejected. In this court, appellant argues that his claim for fraud in the inducement was improperly rejected, and he also raises more minor points. The district court had jurisdiction pursuant to 28 U.S.C. § 1332; the appeal invokes our jurisdiction under 28 U.S.C. § 1291 and our broad powers under 28 U.S.C. § 2106.

We are unable to discern the legal and factual basis for the district court's conclusion that there was a misrepresentation by the bank at the time defendant accepted a substantial loan and executed a personal guaranty. Also, we are troubled by the district court's determination that, on the one hand, Christophides relied upon misrepresentations by the bank when he entered the transaction but that, on the other hand, his injury was insufficiently related to the misrepresentation for the bank to be held responsible for it. We therefore remand the matter to the district court for further consideration in light of the discussion below.

## FACTS

The transactions which gave rise to this lawsuit are well explained in the district court's reported decision. *See Banque Franco–Hellenic de Commerce Int'l et Maritime, S.A. v. Christophides*, 905 F.Supp. 182 (S.D.N.Y.1995). Here, we recount only the facts necessary to explain the reasons for our remand:

Owners of Levant Line, S.A. ("Levant"), a Liberian corporation, purchased two ships which were held in separate corporations and leased to Levant. Ten banks declined to loan funds for the purchase of the ships before plaintiff, on May 24, 1990, agreed to supply the money ($5.7 million). As the court below concluded, there was convincing evidence that the loan was secured through a bribe, by Valiotis, a director of Levant, given to the bank's officers, Trivyzas and Aspiotis, in the form of a "facilitation fee" paid "under the table." *Id.* at 184–85. Six months later, Levant, unable to make timely payments, advised the bank that a third ship would improve the operation.

Christophides purchased such a ship, which was to be held in a corporation called Silver Anchor, with temporary funding. While the bank had approved Christophides's provisional request for financing, it did not agree to the details of the loan until after he bought the ship. The final transaction had three major parts by which Christophides: (1) entered into a long-term charter-party agreement giving Levant exclusive use of the new ship; (2) personally guaranteed the $2

---

* The Honorable J. Daniel Mahoney, who was a member of the panel, died on October 23, 1996, and the appeal is being decided by the remaining two members of the panel, who are in agreement. *See* Local Rule § 0.14(b).

1. The French spelling of the word "Hellenique" in the bank's name, which was used by the parties in this court, differs from the English spelling in the district court's caption.

million obligation of Silver Anchor; and (3) entered into a cross-collateralization agreement linking his ship and the two other vessels operated by Levant.

Levant defaulted on its obligations under the charter-party agreement with Silver Anchor, which was then unable to make any loan payments to the bank. The bank seized and auctioned the newly-purchased vessel, and then brought this action against Christophides, as guarantor, for the balance due under the loan agreement as well as for fees and costs.

■ The district court found a written misrepresentation by the bank with respect to the bribe paid to secure the loan of $5.7 million by the bank to Levant; found that Christophides, when entering the charterparty and financing transaction, acted in reliance on the bank's misrepresentation; but concluded that the misrepresentation was not the legal cause of Silver Anchor's loss. Christophides argues that the last step of this analysis was an error. Although there was no cross-appeal, we consider the questions of misrepresentation and of reliance. If as a matter of law there was either no misrepresentation or no reliance, the judgment would be affirmed, because a judgment may be affirmed on a ground not taken by the district court even without a cross-appeal. *United States v. American Ry. Express Co.,* 265 U.S. 425, 435, 44 S.Ct. 560, 564, 68 L.Ed. 1087 (1924). *See* 15A Wright, Miller & Cooper, *Federal Practice and Procedure* § 3904 (1992); *In re Appointment of Independent Counsel,* 766 F.2d 70, 75 (2d Cir.1985). Indeed, a private party cannot appeal simply to obtain review of unfavorable findings. *New York Telephone Co. v. Maltbie,* 291 U.S. 645, 54 S.Ct. 443, 78 L.Ed. 1041 (1934) (per curiam).

### DISCUSSION

■ Under New York law, a fraud claimant must prove "a representation of fact,

which is either untrue and known to be untrue or recklessly made, and which is offered to deceive the [claimant] and to induce [claimant] to act upon [the misrepresentation], causing injury." *Jo Ann Homes at Bellmore, Inc. v. Dworetz,* 25 N.Y.2d 112, 119, 302 N.Y.S.2d 799, 803, 250 N.E.2d 214, 217 (1969). *See Graubard Mollen Dannett & Horowitz v. Moskovitz,* 86 N.Y.2d 112, 122, 629 N.Y.S.2d 1009, 1014, 653 N.E.2d 1179, 1184 (1995); Restatement (Second) of Torts §§ 525–526, 531 (1976).[2]

### A. Misrepresentation

Despite the district court's finding to the contrary, Christophides may have failed to establish a misrepresentation by the bank. The district court relied on provisions in different documents, yet did not explain its reasons for attributing those assurances to the bank. We address each in turn.

■ Paragraph 5.3 of the Associated loan agreement (the initial loan of $5.7 million for the purchase by Levant through its privately-held corporations of the first two vessels) stated:

> Neither the execution nor delivery of this Agreement or of the Security Documents nor the transactions herein or therein contemplated nor compliance with the terms and conditions hereof or thereof will:
>
> (a) contravene any provisions of law, statute, decree, rule or regulation to which any BORROWER or the Corporate Guarantor is subject or any judgment, decree, franchise, order or permit applicable to any of them. . . .

This provision was incorporated by reference into the second (Silver Anchor) loan agreement which was executed nearly a year later. Paragraph 10.4 of the Associated agreement makes a misrepresentation by a borrower an event of default; ¶ 14.01.21 of the Silver Anchor loan agreement lists as a default thereunder any default in the Associated agreement; and finally, ¶ 8.07 of the Silver Anchor agreement represents that there has been no such default.

**2.** Although the parties' briefs did not raise the issue, we note that New York appears to require proof of fraud by a heightened standard of evidence. *Jo Ann Homes,* 25 N.Y.2d at 121, 302 N.Y.S.2d at 805, 250 N.E.2d at 218 ("The proof required to sustain the fraud cause of action is far more demanding than that needed to prove a breach of contract."); *Abrahami v. UPC Constr. Co.,* 224 A.D.2d 231, 638 N.Y.S.2d 11, 13 (1st Dep't 1996) (". . . the burden of proving fraud at trial is one of clear and convincing evidence, and not mere preponderance.").

■ Were ¶ 8.07 made on behalf of the bank, it would be a false representation that there had been no breach of the Associated agreement. That paragraph, however, is a representation from the borrower and the guarantors to the bank. Section 8 of the agreement is a list of such "representations and warranties made by the Borrower and the Guarantors" to the bank. The illegality clause of the Associated agreement is likewise a representation made to the bank for the bank's benefit. Section 5 of the first agreement begins, "[t]he BORROWERS and the Guarantors hereby make the following representations and warranties with respect to themselves for the benefit of [the] BANK...." Thus, it would appear that the bank did not represent that there was no illegality involved in the first loan.

The district court also relied on the following provision in the Silver Anchor agreement:

> [T]here are and will be no commissions, rebates, premiums or other payments by or to or on account of any one or more of the Borrower and the Guarantors or any of the Shareholders in connection with the purchase of the New Vessel or the Charter-parties other than as already disclosed to the Lender in writing.

Silver Anchor agreement ¶ 8.14. "New Vessel" is defined as the Levant Fortune (the name of Christophides's ship), and the charter-parties are defined as the agreements chartering each of the ships to Levant. Paragraph 8.14 makes no representation regarding either the Associated loan or the purchase of the first two ships. For this reason, we do not see support in the record for the district court's conclusion that the agreement "stat[es] that there were no commissions associated with *any* of the loans." *Christophides*, 905 F.Supp. at 193 (emphasis added). The district court's brief recitation of the misrepresentation concerning the bribe does not include any clear reason for attributing it to the bank, even if the bank caused the statements to be placed in the

agreement as representations to the bank. It is not clear from the record that the bank should be held responsible for statements made for the benefit of itself. We remand the question whether there was a misrepresentation by the bank to the district court for further clarification.[3]

### B. Materiality and justifiable reliance

■ A party asserting fraud must be warranted in taking the misrepresented matter into account when deciding to act, as well as in believing that the misrepresentations were true. The former requirement is materiality and the latter, justifiable reliance. We question whether Christophides has demonstrated that any misrepresentation was material to his decision to guaranty the loans. *See Graubard Mollen*, 86 N.Y.2d at 122, 629 N.Y.S.2d at 1014, 653 N.E.2d at 1184; Restatement (Second) Torts § 538 (1976).

■ The district court found that the bank had notified Christophides of Levant's prior default at the time he entered the loan and guaranty agreements. Indeed, ¶ C of the Addendum to the $5.7 million loan, which was executed by Christophides at the same time as he executed the guaranty, explicitly so states. *Christophides*, 905 F.Supp. at 190. The record, moreover, indicates that Christophides was an insider with a longstanding familiarity with Levant's business. The district court did not explain how any misrepresentation by the bank was material information with respect to Christophides's decision when he knew of the default (more current, and arguably more powerful, evidence of Levant's woes), and when he had an independent basis upon which to evaluate Levant's strength.

We likewise question whether Christophides justifiably relied on representations he had good reason to doubt. While the law does not require that a defrauded party go to the ends of the earth to discover the falsity of a statement, patent foolishness is not excused. As Judge Friendly observed in *Mallis v. Bankers Trust Co.*, 615 F.2d 68, 80–81 (2d Cir.1980), analysis of justifiable reliance

---

**3.** If the above analysis concerning the misrepresentation proves correct, we note that the district court may have to decide whether the bank had a legal duty to disclose the bribe to Christophides, making it potentially liable for fraudulent concealment. This issue was eschewed below because the district court found that the misrepresentations were in writing. *See Christophides*, 905 F.Supp. at 193.

in fraud cases under New York law has taken account of the degree to which the truth was accessible to the defrauded person. Ordinarily there is no duty to exercise due diligence, and cases following *Mallis* have described the necessary showing of care as "minimal diligence" or "negating its own 'recklessness'." *Royal Am. Managers, Inc. v. IRC Holding Corp.*, 885 F.2d 1011, 1015–16 (2d Cir.1989) (citations omitted). A heightened degree of diligence is required where the victim of fraud had hints of its falsity. *Mallis*, 615 F.2d at 81 ("Decisions holding that reliance on misrepresentations was not justified are generally cases in which plaintiff was placed on guard or practically faced with the facts.") (citations omitted). *See Keywell Corp. v. Weinstein*, 33 F.3d 159, 164 (2d Cir.1994).

The district court found that Christophides relied on the assurances of legality in the loan agreements when he entered the transactions with the bank and with Levant. *Christophides*, 905 F.Supp. at 193. It reasoned that "[t]hese misrepresentations form the basis of information on which defendant relied when assessing the risk of his business venture and affixing his signature to a $2 million loan contract." *Id.* Christophides's own testimony, however, indicates that he had heard about the bribes in early February, some two months before the Silver Anchor loan. He could not have justifiably relied on statements that he had reason to know were false. We call this issue to the district court's attention on remand, if necessary to reach a resolution.

## C. *Relationship of the injury to the misrepresentation*

The recipient of misleading information must prove that the misrepresentation proximately caused his injury. *Manufacturers Hanover Trust Co. v. Drysdale Sec. Corp.*, 801 F.2d 13, 20–21 (2d Cir.1986). An injury is proximately caused by the fraud if it is a natural or probable consequence of the defrauder's misrepresentation or if the defrauder ought reasonably to have foreseen that the injury was a likely consequence of the fraud. *Id.* at 21; *Marbury Management, Inc. v. Kohn*, 629 F.2d 705, 708 (2d Cir.1980). *See Ventricelli v. Kinney System Rent A Car, Inc.*, 45 N.Y.2d 950, 411 N.Y.S.2d 555,

383 N.E.2d 1149, *order modified on other grounds*, 46 N.Y.2d 770, 413 N.Y.S.2d 655, 386 N.E.2d 263 (1978).

In reaching its conclusion that Christophides's loss was not legally related to the misrepresentation, the district court relied on cases concerning contract illegality and the causation test there applied. *Christophides*, 905 F.Supp. at 193–94. While the bribe may have been illegal, fraud—not illegality—is the heart of Christophides's misrepresentation defense. Christophides argues that the district court's application of illegality principles led to an improperly restrictive causation test. He believes that proper analysis would treat the transactions by which Christophides secured the loan as a single deal rather than distinct agreements. He says the bank's misrepresentations concerning Levant misled him as to the financial health and business acumen of Levant; the bank knew its $2 million loan to Silver Anchor was entirely dependent on the charter-party agreement with Levant for repayment; and the misrepresentation was thus directly related to the loss actually sustained.

We agree with Christophides that the lower court mistakenly applied cases concerning contract illegality and that the error may have led it to apply too restrictive a test. We leave the issue whether it is appropriate to treat the guaranty and the charter-party as parts of a single transaction, or whether doing so would make the bank's misrepresentation the legal cause of the harm to Christophides, for the district court to address if necessary to resolve this case on remand.

## D. *Rescission and other questions*

The district court did not articulate any reason for its rejection of Christophides's claim for rescission. If it is correct that the bank cannot be held responsible for any misrepresentation in the two loan agreements, then this claim will likely fail. Moreover, rescission may be inappropriate in this case, because the bank has performed its obligation under the loan agreement. In any event, because the district court passed on this claim without comment, we will leave it to that court to decide on remand if then appropriate.

Christophides also continues to argue that the bank improperly failed to disclose a de-

fault by Levant Lines on its loan of $5.7 million prior to the Silver Anchor transaction. As above stated, we see absolutely no basis for this claim: the district court found that the default was expressly disclosed in a document signed by Christophides at the time he executed his personal guaranties. *Christophides*, 905 F.Supp. at 190–91. The record flatly supports the district court's finding that Christophides knew about Levant's default two months before that date.

Attorney fees, costs, and interest are due to the bank under the loan agreement and the guaranty of Christophides. We see nothing improper, in the event the court finds for the bank, with the district court's grant of fees.

### CONCLUSION

The decision of the district court is vacated and the matter remanded for further proceedings in accordance with the dictates of this opinion.