■ EAGLE COMTRONICS, INC., Respondent, v PICO PRODUCTS, INC., Appellant. [705 NYS2d 758] —Order unanimously reversed on the law with costs, motion denied in part, fourth affirmative defense and counterclaims reinstated, cross motion granted and complaint dismissed. Memorandum: This dispute arises out of a June 1988 patent license agreement entered into between plaintiff, Eagle Comtronics, Inc. (Eagle), as licensee, and defendant, Pico Products, Inc. (Pico), as licensor. On a prior appeal, we granted that part of Pico's motion seeking dismissal of the causes of action for unjust enrichment and unfair competition (*Eagle Comtronics v Pico Prods.*, 256 AD2d 1202), leaving only the causes of action for breach of contract and fraud. Pico appeals from an order granting Eagle's motion seeking partial summary judgment on the issue of liability and seeking dismissal of the affirmative defenses and counterclaims and denying Pico's cross motion seeking summary judgment dismissing the complaint. In granting Eagle's motion, Supreme Court determined that Eagle "is entitled to a paid-up license on the same terms as those obtained by [Arcom] in the [r]evised [l]icense [a]greement signed on behalf of Pico and Arcom on October 11, 1988", and ordered an inquest on damages.

We agree with Pico that the court erred in granting Eagle's motion and denying Pico's cross motion. Pico contends that the June 1988 Pico-Eagle agreement provided that Eagle was entitled to amend the agreement to include more favorable terms subsequently granted only to a licensee who was not then holding a written license. Pico contends in the fourth affirmative defense that the "most favored" provision of the Pico-Eagle agreement was not triggered because Arcom held a written license before the Pico-Eagle agreement was made. Eagle counters, however, that the Pico-Arcom agreement of 1984 was terminated automatically by article 10 of that agreement and that the 1988 revised Pico-Arcom agreement triggered the "most favored" provision of the Pico-Eagle agreement.

Under the terms of the Pico-Eagle agreement, if Arcom was "a company presently holding a written license from" Pico in June 1988, then Pico had no obligation to offer Eagle the same favorable terms "subsequently extend[ed]" to Arcom when Pico and Arcom revised their license agreement in October 1988. There is no merit to Eagle's contention that, when Arcom ceased paying royalties in 1987, the 1984 Pico-Arcom license arrangement was terminated, automatically and without any action or choice on Pico's part. Read as a whole, paragraph 10

of the 1984 Pico-Arcom agreement, particularly its explicit references to the "Licensor's right to terminate this Agreement" and to the "exercise of Licensor's right to terminate this Agreement," gave Pico the right, but not the obligation, to terminate the license upon Arcom's default in paying royalties. Nothing in the 1984 contract prevented Pico from accepting deficient performance by Arcom, from waiving any provision made for Pico's benefit, or from electing to continue the agreement in force despite Arcom's breach. "If a performance differing from that required by the contract is approved or accepted, such action may constitute a waiver of performance in accordance with the contract" (22 A NY Jur 2d, Contracts, § 372, at 35).

Pico's submissions on the motion and cross motion establish that the Pico-Arcom license arrangement was not terminated by Pico. Principals of Arcom and Pico aver as much, without contradiction in the record. The continuation of the 1984 agreement is likewise demonstrated by the actions of Pico and Arcom in adhering to most of its provisions and in expressly revising it. That revision did not, by itself, trigger the "most favored terms" provision of the Pico-Eagle agreement. On the contrary, the June 1988 Pico-Eagle agreement explicitly provided that such a revision in favor of a present licensee, such as Arcom, would not inure to Eagle's benefit. Eagle thus failed to demonstrate its entitlement to judgment as a matter of law on the issue of Pico's liability for breach of contract. In contrast, Pico sustained its burden on the cross motion by demonstrating that it was not obligated to offer to Eagle the same favorable terms granted to Arcom, and Eagle failed to raise a triable issue of fact (*see generally, Zuckerman v City of New York,* 49 NY2d 557, 562).

Our analysis of the fraud cause of action is similar. The alleged misrepresentations were Pico's assertions that the revised Arcom agreement did not include a royalty cap and did not confer a paid-up license upon Arcom. In order to prevail on the fraud cause of action, Eagle had to establish that the alleged misrepresentations or omissions were material and that Eagle actually and justifiably relied on them to its detriment (*see,* Abrahami v UPC Constr. Co., 224 AD2d 231, 232-233). Because Eagle had no contractual right to enjoy its license on the same favorable terms granted to Arcom, Eagle has failed to meet its burden in seeking summary judgment to establish the essential elements of materiality and detrimental reliance. Eagle is therefore not entitled to partial summary judgment on the fraud cause of action. Pico, on the other hand, has established its entitlement to summary judgment under the fourth affirmative defense dismissing the fraud cause of action.

In view of our determination, we need not address the propriety of the court's granting that part of Eagle's motion seeking dismissal of the remaining affirmative defenses (*see, Martinez v Wegmans Food Mkts.*, 270 AD2d 834 [decided herewith]). However, because there is no merit to Eagle's interpretation of the contract, there is no basis for the court's granting that part of Eagle's motion seeking dismissal of the counterclaims. Those counterclaims must be reinstated. (Appeal from Order of Supreme Court, Onondaga County, Nicholson, J.—Summary Judgment.) Present—Pigott, Jr., P. J., Pine, Wisner and Hurlbutt, JJ.