■ In the Matter of GERALDINE M. CHRILS, Appellant, v NASSAU COUNTY CIVIL SERVICE COMMISSION, Respondent. (Proceeding No. 1.) In the Matter of BOARD OF TRUSTEES OF THE FARMINGDALE PUBLIC LIBRARY et al., Appellants-Respondents, v CIVIL SERVICE COMMISSION OF NASSAU COUNTY et al., Respondents-Appellants. (Proceeding No. 2.) [716 NYS2d 585] —In two related proceedings pursuant to CPLR article 78 to review a determination of the Nassau County Civil Service Commission, dated July 21, 1998, which, after a hearing, found that the petitioner Geraldine McNeece Chrils committed substantial fraud on her application for an open competitive civil service examination and directed that her employment be terminated, the petitioner in Proceeding No. 1 appeals, and the petitioners in Proceeding No. 2 separately appeal from so much of a judgment of the Supreme Court, Nassau County (Dunne, J.), dated June 21, 1999, as denied their respective petitions and dismissed their respective proceedings, and the respondent Nassau County Civil Service Commission cross-appeals from so much of the same judgment as dismissed its counterclaim asserted in Proceeding No. 2.

Ordered that the judgment is vacated, on the law, without costs or disbursements; and it is further,

Adjudged that the determination is confirmed and the proceedings are dismissed on the merits, without costs or disbursements; and it is further,

Ordered that the counterclaim is dismissed, without costs or disbursements, without prejudice to the commencement of a plenary action for the same relief.

Inasmuch as the petitions raise a substantial evidence question, the Supreme Court erred in not transferring the proceedings to the Appellate Division (*see, Matter of Reape v Gunn,* 154 AD2d 682). Nonetheless, because the record is now before us, this Court will treat the proceeding as if it had been properly transferred here (*see, Matter of Duso v Kralik,* 216 AD2d 297; *Matter of Reape v Gunn, supra*).

Contrary to the petitioners' assertions, the record contains

substantial evidence to support the determination of the respondent Nassau County Civil Service Commission (hereinafter the Commission) that the petitioner in Proceeding No. 1, Geraldine McNeece Chrils, fraudulently misrepresented her place of residence in order to meet a residency requirement and secure a civil service position for which she was not otherwise eligible (*see, 300 Gramatan Ave. Assocs. v New York State Div. of Human Rights,* 45 NY2d 176; *Matter of Siano v Dolce,* 256 AD2d 582). Thus, the determination is confirmed.

In this procedural context, and on the present state of the record, the Commission's counterclaim against the petitioner Board of Trustees of the Farmingdale Public Library pursuant to Civil Service Law § 102 (2) is dismissed without prejudice. If the Commission wishes to pursue its claims, it may do so in an appropriate independent proceeding (*see, e.g., Matter of Johnson v Popolizio,* 153 AD2d 546). Ritter, J. P., Santucci and Goldstein, JJ., concur.

S. Miller, J., concurs in part and dissents in part and votes to grant the petitions to the extent of annulling so much of the determination as found that the petitioner Geraldine McNeece Chrils committed fraud, in the following memorandum: The Nassau County Civil Service Commission (hereinafter the Commission) revoked Geraldine McNeece Chrils' June 16, 1986, certification and appointment to the position of Assistant Library Director I at Farmingdale Public Library (hereinafter the Library) and directed that her employment as Library Director, a position to which she had been appointed in 1990, be terminated immediately. The Commission's determination dated July 21, 1998, was based upon its finding that Chrils "committed fraud of a substantial nature when she knowingly and wilfully gave a false residence address in her application for the position of Assistant Library Director I." The Library and Chrils commenced separate proceedings pursuant to CPLR article 78 to review the determination.

Pursuant to Civil Service Law § 23 (4-a) the Commission promulgated Nassau County Civil Service Commission Rule X (2) which provides in relevant part: "Every applicant for competitive examination * * * must be a resident of the County of Nassau for at least one year immediately preceding the date of the examination." The period crucial to the Commission's finding of fraud regarding Chrils' residence is the one year period preceding the date of her examination, September 7, 1985, i.e., September 8, 1984, to September 7, 1985.

In this proceeding pursuant to CPLR article 78, our standard of review is whether substantial evidence supports the

Commission's determination. In my view it clearly fails to do so. I would, therefore, vacate so much of the Commission's determination as found that Chrils committed a substantial fraud. However, in view of her resignation in February 2000, restoration to her position as Library Director would be inappropriate. Vacatur of so much of the Commission's determination as found that she had committed fraud would, however, serve to restore the good name of which, I believe, she was unjustly deprived.

The party claiming fraud is required to prove its essential elements—" 'representation of a material existing fact, falsity, *scienter*, deception and injury' " (*New York Univ. v Continental Ins. Co.,* 87 NY2d 308, 318, quoting *Channel Master Corp. v Aluminium Ltd. Sales,* 4 NY2d 403, 407 [emphasis in original]; *Matter of Smith v City of New York,* 228 AD2d 381). The party alleging fraud must prove it by clear and convincing evidence, a high order of proof that forbids the awarding of relief whenever the evidence is loose, equivocal, or contradictory (*see, Abrahami v UPC Constr. Co.,* 224 AD2d 231). Thus, the Commission was required to find that Chrils' fraud was established by clear and convincing evidence, and we are required to determine whether that finding was based upon substantial evidence.

The fraud which she allegedly committed was based on a false statement she made on her 1985 application to take the examination which resulted in her promotion to Assistant Library Director I. Her application listed her residence as 80 Silber Avenue, Bethpage, Nassau County, rather than 35 Center Street, Lake Ronkonkoma, Suffolk County. Pursuant to Civil Service Law § 50 (4), the sole basis of her disqualification would be a finding of fraud since "no * * * certification shall be revoked or appointment terminated more than three years after it is made except in the case of fraud." Here, more than three years elapsed between her appointment in 1986 and the determination to revoke her certification in 1998. Thus, absent a finding of fraud, her certification could not be revoked.

Two distinct findings of fact were made by the Commission and are before us for review: (1) that Chrils' residence from September 7, 1984, to September 7, 1985, was incorrectly represented by her as Nassau County, when in fact her primary residence (domicile) was in Suffolk County; and (2) that her misrepresentation of that fact was fraudulent—i.e., made with scienter—rather than a good faith mistake.

Chrils' residence in Nassau County dates back to 1956 when she was two years old and moved with her parents to their Sil-

ber Avenue home, the very home indicated as her residence on the application at issue. She resided there throughout her youth and returned there from college while studying for a masters degree in library science. After renting an apartment in Freeport from 1977-1980, she again returned to her parents' home after her lease expired.

In March 1982 she became engaged and along with her fiance took title to property at 35 Center Street, Lake Ronkonkoma, Suffolk County, which they leased to a third party until they married in September 1982. For the next seven months, she commuted from Lake Ronkonkoma to the Library. However, in May 1983 she claims to have moved back to her parents' home in Bethpage, where she continued to reside during the week—returning to the Ronkonkoma residence where her husband resided on weekends. She continued the pattern of dual residences after the birth of her children (December 1985 and December 1987) during which time her mother provided for their care while she was at work.

When her mother's arthritis progressively worsened, Chrils and her husband purchased a different home in Ronkonkoma, close to the home of her mother-in-law, who had agreed to provide day care for their children. After moving to their new home in 1990, she no longer stayed at her parent's Bethpage home, but resided entirely in Suffolk County. Upon making this change in her living circumstances, she notified the Library and changed her address in the payroll records.

Chrils explained her dual residence as a necessary accommodation to avoid the stress of commuting and to avail herself of her mother's assistance in caring for her young children. She had suffered a miscarriage in September 1984, an incident that confirmed the decision she and her husband made that the stress of commuting should be avoided if at all possible. She believed that these circumstances were not at all unusual where both parents are employed in different counties and child care is a major consideration.

She served as a librarian in the Library for 19 years. In January 1980 while a resident of Freeport, the petitioner was hired as Librarian I pursuant to an open competitive civil service list, and she became Librarian II in December, 1983, after having again applied for the open competitive examination. Her 1986 appointment as Assistant Library Director I, the subject of this CPLR article 78 proceeding, was also accomplished after her application for an open competitive examination, although members of the Library's Board of Trustees contend that they requested that she be promoted by promo-

tional examination and that she was actually so promoted. [The relevancy of the distinction between open competitive examination and appointment by promotional examination will be explained *infra*]. In November 1990 she was *"promotionally* appointed" Library Director III.

During a significant period of the 19 years of the petitioner's employment by the Library (1980-1999) the record unequivocally supports the fact that she divided her time, spending weekdays in Nassau and weekends in Suffolk. However, the Commission found that her domicile was in Ronkonkoma, Suffolk County. As to this issue, I agree with the majority, that the Commission's finding is based upon substantial evidence.

The various nexuses indicating that Chrils' residence from 1982 on was in Ronkonkoma, Suffolk County, may be summarized as follows: she and her husband owned and maintained their marital residence there, purchasing their first home in 1982, and their present home in 1990; Suffolk County was the county of residence indicated on their tax returns, car registrations, health insurance, W-4 forms, disability benefit applications, and her children's birth certificates; and the children's pediatrician was located in Suffolk County.

Notwithstanding all of the above indicia of residence in Suffolk County, which neither Chrils nor the Library made any effort to conceal, as all were fully disclosed, Chrils explained that she frequently listed Nassau as her county of residence because she truly believed that she primarily resided at her parent's home in Bethpage. "It was where I went at night, where my clothes were, where my car was, where my children later on were, where my family unit as it was, my mother and father and I and later my children, their grandchildren." She voted in Nassau County and served jury duty in Nassau County. Her children were born in a Nassau County hospital and the Library's payroll records listed Nassau County as her residence. She lived in her parents home from 1983 to 1989 on weekdays, returning to Suffolk on weekends.

Although I do not dispute the Commission's finding that the petitioner's domicile was Suffolk County, I do disagree with the Commission's finding of fraud. The record reveals not a scintilla of evidence of concealment or of any attempt by Chrils to mislead her employer or in fact anyone, as to the obvious facts of her dual residences. With full awareness of her living arrangements, the Library Board supported her appointment as Assistant Library Director I. Given the fact that her employer found no cause for concern, what circumstances would have alerted Chrils to her vulnerability? Had she intended to conceal

her Suffolk residence, would she have revealed it in the internal records of the library? Where are the scienter, the deception, the lies, and the concealment, that are the hallmark of fraud which must be proven by clear and convincing evidence? Moreover, it is noteworthy that the issue of Chrils' residence would have been inconsequential had her application been made through a "promotional" examination as the Library requested rather than through open competitive examinations.

Civil Service Law § 52 (1) provides for the filling of vacancies by promotion. The statute reveals a legislative purpose favoring appointment of career civil service employees by promotion instead of by original appointments on open competitive examinations. Promotional appointments were deemed preferable to original appointments in that they serve to protect and encourage career civil service employees.

Pursuant to Civil Service Law § 52 (7) a qualified employee may be promoted by being one of the top three eligibles, and no exam is required when that employee is "already qualified in an examination appropriate to the duties and responsibilities of the position." Most significantly, if a person is promoted to a competitive civil service position as distinguished from receiving an original appointment off the open competitive list, that person would not be required to meet any residency requirement. The county residency requirement found in Nassau County Civil Service Commission Rule X applies only to original (not promotional) open competitive examinations. In fact, Civil Service Law § 23 (4-a) specifically proscribes residency requirements for promotion, providing: "An appointing authority of a department or agency of a city or civil division may require that eligibles who are residents of such city or civil division shall be certified first for appointment, *provided, however, no such preference shall be given on appointments from promotion lists*" (emphasis added).

The Library contends that it notified the Civil Service Commission of its intention to *promote* Chrils rather than have her appointed by open competitive examination, and that it submitted the Commission's form "EL-17" entitled "Request for Certificate of Eligibles List" accordingly, on which was typewritten "Please submit the name of Geraldine McNeece as we want to promote her." It was because no promotional exam was offered that Chrils was selected from among the candidates which took the open competitive exam. Had the Library recognized that distinction, it would have insisted that a promotional exam be scheduled, which would have entirely nullified the residency requirements.

232

The aforesaid illustrates that neither Chrils nor the Library had any need or motive to defraud the Commission in order for her to attain the desired position. Had the appropriate proceedings been pursued, she would have legally attained it even as a Suffolk County resident.

The Commission's finding of fraud was based in large part on Chrils' representation that she resided in Nassau when in fact her domicile was in Suffolk. However, the mere circumstances of her dual residences, all open and disclosed, fail to establish the scienter required for fraud. Clearly, the Commission's assessment of the credibility of witnesses at the hearing is entitled to great weight and deference. However, it is not shielded from the test of reasonableness, a test which I find it fails. Notwithstanding the uncontroverted evidence that Chrils consistently, for major periods of time, lived at her parents' home in Nassau during the week and commuted to Ronkonkoma on weekends, the Commission chose to disregard that uncontroverted evidence, disbelieving all the witnesses and characterized Chrils' living arrangements with her parents as mere "visit[s] from time to time for convenience." The issue of fact in dispute was not whether Chrils ever lived with her parents for substantial periods between 1983 and 1989, but whether she lived there during the crucial period between September 1984 and September 1985, predating the application in question. The Commission relies heavily on its interpretation of the testimony of Mrs. Carillo, Chrils' mother-in-law, that Chrils only returned to her parents' home in the spring of 1985. However, Mrs. Carillo's testimony is inconsistent and inconsequential. She first testified that Chrils returned to her parents' home prior to her miscarriage, in September 1984, and subsequently that Chrils began to live there after her first child was born in December 1985. Finally, she corrected her testimony, admitting she simply did not know when Chrils returned to the Bethpage residence: Question: "You don't know exactly when Dina moved back to Bethpage, do you?" Answer: "No, I don't."

Ironically, Chrils, who was found guilty of committing substantial fraud warranting the termination of her employment was described by all members of the Library Board of Trustees (hereinafter the Board) in superlative terms. The President of the Board stated that she "exhibited all the qualities that the Library seeks. Her long time roots in Nassau County as well as her outstanding and faithful service to the Library have occasioned the Library Board to come to her support." The Vice President of the Board, indicating the Board's

intention to promote her in recognition of her outstanding abilities as well as to reward her dedication and devotion to the community and the Library further stated: "Ms. Chrils has been a loyal employee of the Library and her services are invaluable. She is a career civil servant who has risen through the ranks demonstrating superior qualifications and exemplary achievements in all the positions she has held at the Library since her initial employment in 1980."

The President of the Friends of Farmingdale Library referred to her tireless efforts on behalf of the community and to her fair treatment of all:

"Under Ms. Chrils' outstanding leadership, the Library has been transformed from an under-utilized, somewhat sleepy operation into a forward-moving, progressive information center that has become a community center of learning and socialization.

"Ms. Chrils should be commended for her efforts in improving the Library and for improving community life in general. Her efforts at the Library, on the Chamber of Commerce, and in other community groups have contributed significantly to improving the quality of life in Farmingdale."

Such commendations were based upon the Library's experience with Chrils after 18 years of continuous service unmarred by even a shadow of misconduct.

It would not require an excess of curiosity to inspire one to wonder what sparked the 1998 investigation of the petitioner's application completed 13 years before. Although not explored in depth, the record more than hints that it may have stemmed from an unrelated incident wherein the petitioner disclosed misconduct by another library employee. That incident apparently inspired a whistle-blowing response focusing on the petitioner's alleged improper residence at the time she completed her application, and a campaign of letters to the Commission questioning the legitimacy of the petitioner's residency.

As stated earlier, the petitioner no longer seeks to reclaim her job, but she does seek to to clear her name, an asset of immeasurable value—indeed, "the immediate jewel of [her] soul" (Shakespeare, Othello, Act II). For the reasons stated, she is entitled to the relief sought.