■ DDJ MANAGEMENT, LLC, et al., Respondents, v RHONE GROUP L.L.C. et al., Appellants, et al., Defendants. DDJ MANAGEMENT, LLC, et al., Appellants, v RHONE GROUP L.L.C. et al., Defendants, and PRICEWATERHOUSECOOPERS, LLP, Respondent. [875 NYS2d 17]—

Order, Supreme Court, New York County (Helen E. Freedman, J.), entered April 28, 2008, which, insofar as appealed from by defendants, denied the motions of defendants-appellants to dismiss plaintiffs' fraud cause of action as against them, unanimously reversed, without costs, the motions granted, and the fraud cause of action dismissed. Judgment, same court and Justice, entered May 5, 2008, dismissing the complaint as against defendant PriceWaterhouseCoopers (PwC) pursuant to the above order, which, inter alia, granted PwC's motion to dismiss the complaint, unanimously affirmed, without costs. Plaintiffs' appeal from the above order unanimously dismissed, without costs, as subsumed in the appeal from the judgment.

Plaintiffs are a group of investors that in March 2005 loaned $40 million to the now-defunct American Remanufacturers Holdings, Inc. (ARI). Defendant PwC performed an audit on ARI's 2003 financial statements, which was not certified as "unqualified" until 2005, and the remaining defendants are officers, owners, and shareholders of and entities related to ARI.

It is uncontested that a condition of plaintiffs' loan was that the PwC 2003 audit be "unqualified." However, prior to the issuance of the unqualified audit report, ARI issued financial statements, unaudited and unfootnoted, for 2004, showing that earnings before interest, taxes, depreciation and amortization (EBITDA) had dramatically improved from the 2003 financial statements. This EBITDA was also a determinative factor in plaintiffs' decision to loan ARI the requested $40 million. However, the improved EBITDA was the result of ARI's decision not to take reserves for inventory which remained unsold for one year, and only take reserves for items which remained unsold for two years. Thus, the improved EBITDA was a bookkeeping improvement, which did not improve ARI's cash position, and plaintiffs were not informed that this bookkeeping device had changed since the 2003 financial statements. PwC also reviewed ARI's unaudited and unfootnoted financial statements for 2004 prior to completing the unqualified audit of the 2003 financial statements, but did not do a "subsequent events" footnote in the final 2003 unqualified audit, or conduct a "going

concern" analysis relating to the 2004 financial statements. Shortly after plaintiffs loaned the money to ARI, ARI went bankrupt, and plaintiffs lost the entire $40 million.

Plaintiffs allege that PwC's 2003 audit report was improper because it stated that PwC had conducted an "independent" audit of the 2003 financial statements, and that the audit was conducted in accordance with generally accepted accounting standards (GAAS). According to plaintiffs, this was incorrect because PwC had succumbed to pressure from the borrower defendants not to resign from the audit, and thus, it was no longer independent, and it did not conduct the audit according to GAAS because it did not include a "going concern" analysis or a "subsequent events" note, which should have allegedly required it to discover the falsity in ARI's books and reported on them, noting that ARI was on the verge of collapse.

The motion court properly dismissed the complaint as against PwC. Mere allegations that PwC was no longer independent, or that the audit was not conducted in accordance with GAAS, alone, are insufficient to state a cause of action against PwC because the alleged misrepresentations or misconduct must have done more than induced plaintiffs to enter into the transaction; they must have also been a proximate cause of plaintiffs' loss (*see Laub v Faessel*, 297 AD2d 28, 30-31 [2002]; *see also Friedman v Anderson*, 23 AD3d 163, 167 [2005]). Here, the alleged errors do not go to the financial condition of ARI, and plaintiffs cite nothing in the 2003 audit report which was inaccurate or incorrect (*see In re Ramp Corp. Sec. Litig.*, 2006 WL 2037913, *8, 2006 US Dist LEXIS 49579, *23-24 [SD NY 2006]). Moreover, PwC's failure to perform a "going concern" analysis does not allege a cause of action, because PwC's audit was only for ARI's 2003 financial statements, and the codification of GAAS, at U.S. Auditing Standards (AU) § 341.02, provides "[t]he auditor has a responsibility to evaluate whether there is substantial doubt about the entity's ability to continue as a going concern for a reasonable period of time, not to exceed one year beyond the date of the financial statements being audited." By the time PwC issued its final unqualified 2003 audit report, ARI had already continued as a going concern for more than one year (*see Pew v Cardarelli*, 2005 WL 3817472, *9, 2005 US Dist LEXIS 40018, *27 [ND NY 2005], *affd* 164 Fed Appx 41 [2d Cir 2006] [since company continued as a going concern for over one year, failure to include a going concern qualification cannot have constituted a material omission]; *Schick v Ernst & Young*, 808 F Supp 1097, 1103 [SD NY 1992]), and plaintiffs cite no authority obliging PwC to conduct an audit of ARI's unaudited

2004 financial statements to determine its viability as a going concern past one year from the 2003 financial statements. Nor was PwC obliged to include a "subsequent events" note in the 2003 audit report, discovering and revealing the changed accounting in ARI's 2004 financial statements, as it did not affect any part of the 2003 financial statements (AU § 560.01).

Furthermore, contrary to the determination of the motion court, dismissal of plaintiffs' fraud claim as against the remaining defendants was warranted. "As a matter of law, a sophisticated plaintiff cannot establish that it entered into an arm's length transaction in justifiable reliance on alleged misrepresentations if that plaintiff failed to make use of the means of verification that were available to it" (*UST Private Equity Invs. Fund v Salomon Smith Barney*, 288 AD2d 87, 88 [2001]). To sustain a claim for fraud, sophisticated investors, as here, must have discharged their own affirmative duty to exercise ordinary intelligence and conduct an independent appraisal of the risks they are assuming (*see Global Mins. & Metals Corp. v Holme*, 35 AD3d 93, 100 [2006], *lv denied* 8 NY3d 804 [2007]; *Abrahami v UPC Constr. Co.*, 224 AD2d 231, 234 [1996]). Here, plaintiffs never conducted any due diligence as it related to ARI's 2004 financial statements, on which plaintiffs primarily relied in making the loan to ARI. That is, plaintiffs never looked at ARI's books and records, as was expressly their right under the loan agreement, and even if there was no such express right, plaintiffs could have insisted on the right to review the books and records prior to making the loan. Having failed to make any such effort to evaluate the risk for themselves, they cannot now properly allege reasonable reliance on the purported misrepresentations (*see Permasteelisa, S.p.A. v Lincolnshire Mgt., Inc.*, 16 AD3d 352 [2005]). Concur—Mazzarelli, J.P., Saxe, Friedman, Acosta and DeGrasse, JJ. [*See* 19 Misc 3d 1124(A), 2008 NY Slip Op 50839(U).]