## TERRA SECURITIES ASA KONKURSBO, et al., Plaintiffs,

v.

## CITIGROUP, INC., et al., Defendants.

## Banca Carige S.P.A.—Casa Di Risparmio Di Genova E Imperia, et al., Plaintiffs,

v.

## Citigroup Inc., et al., Defendants.

### No. 09 Civ. 7058 (VM).

United States District Court, S.D. New York.

Aug. 16, 2010.

Marc E. Kasowitz, Charles Matthew Miller, John Charles Canoni, Michael Matthew Fay, Kasowitz, Benson, Torres & Friedman LLP, New York, NY, for Plaintiffs.

Brad Scott Karp, John Frederick Baughman, Susanna Michele Buergel, Daniel H. Levi, Paul, Weiss, Rifkind, Wharton & Garrison LLP, Alastair Wood, Paul, Hastings, Janofsky & Walker LLP, New York, NY, for Defendants.

### DECISION AND ORDER

VICTOR MARRERO, District Judge.

Plaintiffs Terra Securities ASA Konkursbo ("Terra") and seven Norwegian municipalities—Bremanger, Hattfjelldal, Hemnes, Kvinesdal, Narvik, Rana and Vik (the "Municipalities")—filed an amended complaint in this action, dated March 15, 2010 (the "Terra Complaint"), naming as defendants Citigroup, Inc., Citigroup Global Markets, Inc., Citigroup Alternative In-

vestments LLC, and Citigroup Financial Products, Inc. (collectively, "Defendants"). Terra and the Municipalities assert securities fraud claims under § 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b) ("§ 10(b)"), Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5, and § 20(a) of the Exchange Act ("§ 20(a)"), 15 U.S.C. § 78t(a), as well as common law fraud and negligent misrepresentation claims.

On April 20, 2010, Banca Carige S.P.A.—Cassa Di Risparmio Di Genova E Imperia, Carige Vita Nuova S.P.A., and Carige Assicurazioni S.P.A. (collectively, "Banca Carige", together with Terra and the Municipalities, "Plaintiffs"), filed a complaint (the "Banca Carige Complaint") asserting nearly identical securities and common law fraud claims against Defendants arising out of underlying events and operative facts substantially similar to those asserted in the Terra Complaint.

Defendants now move to dismiss the Terra and Banca Carige Complaints pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), asserting that Plaintiffs fail to state a claim upon which relief can be granted.

For the reasons stated below, Defendants' motion to dismiss the Terra Complaint is GRANTED in part and DENIED in part, and the motion to dismiss the Banca Carige Complaint is GRANTED.

## I. BACKGROUND[1]

### A. PROCEDURAL HISTORY

Terra and the Municipalities filed this action in August 2009. In October 2009,

Defendants moved to dismiss the original complaint on subject matter jurisdiction and forum non conveniens grounds. By Decision and Order dated February 16, 2010 (the "February 2010 Decision"), the Court denied Defendants' motion.[2] Thereafter, Terra and the Municipalities filed the amended Terra Complaint, dated March 15, 2010.

As noted above, the Banca Carige Complaint was filed in April 2010, alleging claims substantially similar to those brought in the Terra Complaint. By Order dated May 4, 2010, the Court consolidated the two actions, and Defendants now move to dismiss both the Terra and Banca Carige Complaints for failure to state a claim under Rule 12(b)(6).

### B. FACTUAL ALLEGATIONS

The operative facts and events underlying the Terra Complaint are largely set forth in the February 2010 Decision, familiarity with which is assumed. Here, the Court will briefly review additional facts relevant to this motion to dismiss, as well as factual background and allegations derived from the Banca Carige Complaint.

### 1. Plaintiffs' Fund–Linked Investments

In May and June of 2007, Defendants sold over $115 million in securities to the Municipalities through Terra, a Norwegian securities firm. The securities constituted fund-linked notes ("FLNs") linked to the

---

**1.** The facts below are taken from the Terra and Banca Carige Complaints, which the Court accepts as true for the purpose of ruling on a motion to dismiss. *See Spool v. World Child Int'l Adoption Agency,* 520 F.3d 178, 180 (2d Cir.2008) (*citing GICC Capital Corp. v. Tech. Fin. Group, Inc.,* 67 F.3d 463,

465 (2d Cir.1995)). Except where specifically referenced, no further citation to these documents will be made.

**2.** The February 2010 Decision is reported at *Terra Securities ASA Konkursbo v. Citigroup, Inc.,* 688 F.Supp.2d 303 (S.D.N.Y.2010).

Citi Tender Option Bond Fund (the "Citi TOB Fund"). The FLNs were arranged by Defendants, issued by Banque AIG and Starling Finance, PLC, and purchased by Terra "for the benefit of the investing Municipalities." (Terra Complaint ¶ 58.)

Similarly, in or around January 2007, Defendants sold 10 million euros worth of FLNs linked to Defendants' Offshore Tender Option Bond Fund (the "Offshore TOB Fund," together with the Citi TOB Fund, the "Funds") to Banca Carige, and entered into a fund-linked "Total Return Swap" (the "TRS") agreement with Banca Carige.

## 2. *Marketing Materials*

In or about April 2007, Defendants began marketing the FLNs to the Municipalities through Terra. In May and June of 2007, Terra entered into distribution agreements (the "Distribution Agreements") with Defendants, which governed the terms of their FLN distribution, and mandated distribution of marketing materials, including the presentation (the "Presentation") that Plaintiffs allege contained material misstatements and omissions of fact. On two separate occasions, Defendants allegedly provided the Presentation to Terra with full knowledge and intention that it would be transmitted to the Municipalities and/or would serve as the basis for Terra's advice to the Municipalities with respect to their investment in the FLNs.

Similarly, Banca Carige alleges that Defendants provided it with the Presentation along with other materials marketing the Offshore TOB Fund beginning in or around November 2006.

The Presentation marketed the Funds by describing the Funds' investment strategy, detailing their structure, and purporting to demonstrate the historical performance of municipal yields hedged with interest rate swap agreements. The Presentation described the Funds' investment strategy as an arbitrage opportunity for investors, whereby the Funds take advantage of the relative steepness of the long-term, nontaxable, municipal curve as against a taxable London Interbank Offered Rate ("LIBOR") curve (the "Hedging Strategy"). The Funds purported to hedge against a drop in municipal bond values with LIBOR swap agreements that traded a fixed interest rate for a floating rate, and Defendants represented that the net amount long-term municipal bonds pay over the cost of short-term LIBOR loans (the "Arbitrage") was consistent over time.

Both the Terra and Banca Carige Complaints rely primarily on allegations that Defendants materially misrepresented the Hedging Strategy by portraying the correlation between long-term municipal bond rates and LIBOR swap rates as "virtually perfect, with a factor of almost .97 out of a possible 1." (Terra Complaint ¶ 5; Banca Carige Complaint ¶ 5.) Specifically, Plaintiffs rely on a graph contained in the Presentation entitled "Correlation Between Municipal and LIBOR rates" (the "Graph"), which purports to represent a regression analysis of the taxable and nontaxable rates over the last thirty years. (Terra Complaint ¶ 40; Banca Carige Complaint ¶ 36.) Defendants represented that the Arbitrage was the result of "market inefficiency due to investor preference for shorter term municipal maturities, the risk of changes in tax law, and the lack of any short market on municipal bonds." (Terra Complaint ¶ 34.)

Plaintiffs allege that the correlation presented in the Graph was "blatantly false and misleading." (Terra Complaint ¶ 6; Banca Carige Complaint ¶ 6.) The Graph incorrectly compared levels of interest rates and not rates of change, and thereby generated the misrepresentative, near-per-

fect correlation. Plaintiffs also condemn statistical flaws that led to the misrepresentative Graph, including an unacceptable standard error. By contrast to the Graph's representation, Plaintiffs allege that if more accurate correlation analyses for the hedging strategy were employed, the result would have been a significantly lower correlation factor—as low as .562 or .27 out of a possible 1, depending on the municipal benchmark used. As a result, Plaintiffs allege that Defendants misrepresented the risk associated with the FLNs and the TRS, and that they relied on these misrepresentations to their financial detriment.

### 3. *Failure to Disclose Credit and Liquidity Risk*

Plaintiffs allege that the Presentation materially omitted to disclose two additional risk factors: (1) credit risk—the risk that municipal borrowers may become less creditworthy; and (2) liquidity risk—the risk that investors may become increasingly concerned about the liquidity of their long-term municipal bonds.[3] Plaintiffs assert that the risk that insurers to the municipal debt offerings would falter could not be effectively hedged with interest rate swap agreements and thus should have been disclosed in the Presentation.

### 4. *Financial Loss*

Six weeks after the Municipalities' purchase of the FLNs, Defendants' representations regarding the high correlation between municipal and LIBOR rates were proven "demonstrably false, and those rates began to dramatically diverge." (Terra Complaint ¶ 72.) As the rates diverged, the Citi TOB Fund's assets, and thus correspondingly the Municipalities'

FLNs, lost value. Municipal bond yields increased, causing the value of long-term municipal bonds to fall, but the Funds' taxable LIBOR swap agreements did not offset the non-taxable losses. Instead, "as investors worried about credit and liquidity risk," yields fell on taxable instruments, and thus both assets held by the Citi TOB Fund fell in value. (*Id.* ¶ 73.)

Ultimately, at the request of Defendants and Terra, the Municipalities sold their FLNs in late 2007 and early 2008. Combined, the Municipalities lost approximately $90 million, and these investment losses also allegedly resulted in Terra's financial ruin. Following the precipitous decline of the FLNs, Norway's Financial Supervisory Agency launched an investigation into Terra, which forced Terra to cease operations and declare bankruptcy.

For its part, Banca Carige alleges damages in excess of $47 million resulting from Defendants' alleged fraud. In or about the spring of 2008, after their fund-linked investments had suffered losses, Defendants contacted Banca Carige and assured them that the Offshore TOB Fund was stabilizing. Later that year, in December 2008, Banca Carige retained an Italian law firm to evaluate their fund-linked investments, an evaluation which ultimately prompted the instant action.

Plaintiffs allege that where they lost, Defendants gained: the fund-linked investments were set up to provide insurance for Defendants' investments in the Funds, as well as hefty advisory and dealing fees.

## II. *LEGAL STANDARD*

In assessing a motion to dismiss under Rule 12(b)(6), dismissal of a complaint is appropriate if the plaintiff has failed to

---

**3.** The Banca Carige Complaint does not allege any omission of liquidity risk, only credit risk.

offer factual allegations sufficient to render the asserted claim plausible on its face. *See Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (*quoting Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). To state a facially plausible claim, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, a court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955. The task of a court in ruling on a motion to dismiss is to "assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *In re Initial Pub. Offering Sec. Litig.,* 383 F.Supp.2d 566, 574 (S.D.N.Y.2005) (internal quotation marks and citation omitted).

For the purposes of deciding a motion to dismiss, the Court accepts the factual allegations in a complaint as true, and draws all reasonable inferences in the plaintiff's favor. *See Iqbal,* 129 S.Ct. at 1950 ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."); *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir.2002) (finding that all reasonable inferences shall be drawn in plaintiff's favor). However, allegations that are no more than legal conclusions "are not entitled to the assumption of truth." *Iqbal,* 129 S.Ct. at 1950.

## III. DISCUSSION

### A. FEDERAL SECURITIES FRAUD

[1] In the February 2010 Decision, the Court denied Defendants' motion to dismiss Plaintiffs' claims for lack of subject matter jurisdiction. Relying on the then-operative "conduct or effect" test employed for years in this Circuit to determine jurisdiction over extraterritorial § 10(b) disputes, the Court found that the heart of the alleged fraud had occurred in this District and the conduct test was thus satisfied.

Four months later, as discussed at length by this Court in *Cornwell v. Credit Suisse,* No. 08 Civ. 3758, 729 F.supp.2d 620, 2010 WL 3069597 (S.D.N.Y. July 27, 2010), the Supreme Court scrapped the conduct or effect analysis as applied to § 10(b). *See Morrison v. National Austl. Bank,* —— U.S. ——, 130 S.Ct. 2869, 177 L.Ed.2d 535 (2010). In its place, the Supreme Court devised a new test specifying the exclusive types of transactions to which § 10(b) applies: "[1] the purchase or sale of a security listed on an American stock exchange, and [2] the purchase or sale of any other security in the United States." *Morrison,* 130 S.Ct. at 2888.

At a telephone conference held on July 2, 2010, the parties to the instant dispute agreed that *Morrison* is controlling here. The parties do not dispute that the FLNs that Plaintiffs purchased were listed on European stock exchanges and the TRS was sold in Europe. Accordingly, the Court grants Defendants' motion to dismiss Plaintiffs' federal securities fraud claims under §§ 10(b) and 20(a).

### B. COMMON LAW FRAUD

In addition to their federal securities fraud claims, Plaintiffs bring common law fraud claims arising out of the same allegedly fraudulent conduct.[4] To state a claim

---

**4.** Despite the dismissal of Plaintiffs' federal claims, the Court notes that it retains diversity jurisdiction over Plaintiffs' common law claims pursuant to 28 U.S.C. § 1332.

for common law fraud under New York law, a plaintiff must allege: "(1) a material representation or omission of fact; (2) made with knowledge of its falsity; (3) with an intent to defraud; and (4) reasonable reliance on the part of the plaintiff, (5) that causes damage to the plaintiff." *Haggerty v. Ciarelli & Dempsey,* 374 Fed. Appx. 92, 94 (2d Cir.2010) (*citing Eurycleia Partners, LP v. Seward & Kissel, LLP,* 12 N.Y.3d 553, 883 N.Y.S.2d 147, 910 N.E.2d 976 (2009)). Claims of common law fraud must satisfy the requirements of Rule 9(b) of the Federal Rules of Civil Procedure ("Rule 9(b)"). *See Abercrombie v. Andrew Coll.,* 438 F.Supp.2d 243, 274 (S.D.N.Y.2006).

Defendants argue that Plaintiffs fail to plead two elements of their common law fraud claims: (1) reasonable reliance upon the alleged material misstatements, and (2) that the reliance caused their alleged injuries.

### 1. *Reasonable Reliance*

■■■■ New York law requires that plaintiffs alleging common law fraud establish reasonable reliance on a material misrepresentation. *See Schlaifer Nance & Co. v. Estate of Warhol,* 119 F.3d 91, 98 (2d Cir.1997). A plaintiff must demonstrate that there was some basis for it to have relied on the alleged misstatement or omission. To determine, on a motion to dismiss, whether a plaintiff has alleged reasonable reliance, a court may "consider the entire context of the transaction, including ... the sophistication of the parties, and the content of any agreements between them." *Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.,* 343 F.3d 189, 195 (2d Cir.2003); *see also Olkey v. Hyperion 1999 Term Trust, Inc.,* 98 F.3d 2, 5–9 (2d Cir.1996); *In re Livent, Inc.,* 151 F.Supp.2d 371, 439 (S.D.N.Y. 2001).

### a. *Sophisticated Investors*

■■■ The reasonableness of a claim of reliance must be considered in light of the plaintiff's sophistication. "It is well established that where sophisticated businessmen engaged in major transactions enjoy access to critical information but fail to take advantage of that access, New York courts are particularly disinclined to entertain claims of justifiable reliance." *Lazard Freres & Co. v. Protective Life Ins. Co.,* 108 F.3d 1531, 1541 (2d Cir.1997) (quotations omitted). Sophisticated investors must "investigate the information available to them with the care and prudence expected from people blessed with full access to information." *Hirsch v. du Pont,* 553 F.2d 750, 763 (2d Cir.1977); *see also Banque Franco–Hellenique de Commerce Intern., et Maritime, S.A. v. Christophides,* 106 F.3d 22, 27 (2d Cir.1997) (finding that analysis of reasonable reliance in "fraud cases under New York law has taken account of the degree to which the truth was accessible to the defrauded person").

Defendants argue that, as sophisticated investors, Terra and Banca Carige had a duty to investigate and inquire regarding any purported misrepresentations, and any reliance on their part was thus unreasonable as a matter of law. Plaintiffs counter that reasonableness of reliance is a question of fact, generally not properly resolved on a motion to dismiss. Even if properly considered here, Plaintiffs argue that Defendants' misrepresentations and omissions were not discoverable from "available information" provided to them prior to their investments. (Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Complaint, dated May 28, 2010, at 18; Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Amended Complaint, dated May 14, 2010, at 14.)

■ As an initial matter, the Court notes that the reasonableness of reliance is properly considered at the motion to dismiss stage. *See, e.g., Emergent Capital,* 343 F.3d at 195; *Abu Dhabi Commercial Bank v. Morgan Stanley & Co., Inc.,* 651 F.Supp.2d 155, 180–81 (S.D.N.Y.2009).

The Court thus turns to consideration of whether Terra and Banca Carige are sophisticated financial entities that, as a matter of law, could not have reasonably relied on the alleged misrepresentations.[5] Representations by a plaintiff that it had "knowledge and experience in financial and business matters and that it could readily evaluate the risks of the transaction" can indicate sophistication for the purposes of this analysis. *Emergent Capital,* 343 F.3d at 196.

In their respective Complaints and agreements relevant to this dispute, Terra and Banca Carige acknowledge their own sophistication as investors. In their Complaints, Terra indicates that it is a "Norwegian securities brokerage firm" (Terra Complaint ¶ 1), and Banca Carige identifies itself as a "full-service Italian bank . . . [that] managed the investment portfolios" of its subsidiary insurance companies. (*See* Banca Carige Complaint ¶ 16.) In addition, as noted above, Terra entered into Distribution Agreements with Citigroup to market and distribute the FLNs at issue here.[6] (Terra Complaint ¶ 27.) The Distribution Agreements provide, in pertinent part: "Terra has sufficient knowledge, experience, and professional advice to make its own evaluation of the merits and risks of a transaction of this type," (*e.g.,* Declaration of John F. Baughman in Support of Defendants' Motion to Dismiss the Amended Complaint, dated April 12, 2010 ("Baughman Decl."), Ex. 3 at 2); and "The Distributor represents and warrants . . . that . . . it is experienced in distributing structured products and understands the risks inherent in them . . . ." (*Id.* at 5.) Likewise, Banca Carige, in the TRS agreement, avowed that "[i]t is capable of evaluating and understanding (on its own behalf or through independent professional advice), and understands and accepts, the terms, conditions, and risks of [the transaction.]" (Paul Nicholas Ferguson Declaration in Support of Defendants' Motion to Dismiss the Complaint, dated May 11, 2010, Ex. 5, Schedule Part 4(m).).

Terra and Banca Carige assert that the information underlying the alleged misrepresentations was within the peculiar knowledge of Defendants and unavailable to them. However, Plaintiffs mischaracterize what constitutes available information for the purposes of the present inquiry. The availability of information in this context is not whether the requisite material was made available to Plaintiffs by Defendants. Rather, available in this context denotes accessible—would the information necessary to unmask the alleged fraud have been accessible to the sophisticated party through minimal diligence. *See Christophides,* 106 F.3d at 27 ("[A]nalysis of justifiable reliance in fraud cases under New York law has taken account of the degree to which the truth was accessible to the defrauded person."); *Emergent Capital,* 165 F.Supp.2d at 623 ("[T]he sophisticated investor such as Emergent must show that he or she has made an independent inquiry into all available information."); *Giannacopoulos v. Credit Suisse,* 37 F.Supp.2d 626, 633 (S.D.N.Y.

---

5. The parties agree that the Municipalities are not sophisticated investors for the purposes of this inquiry.

6. Notably, Terra relies on these Distribution Agreements to argue that it was required to provide marketing materials, including the Presentation, to the Municipalities.

1999) ("[W]here parties have access to information that could expose a misrepresentation, courts will not find their reliance sufficiently justifiable to merit legal protection."); *cf. Abu Dhabi Commercial Bank,* 651 F.Supp.2d at 181 (finding that sophisticated investors had sufficiently alleged common law fraud where only non-public information would have exposed alleged misstatements).

Terra and Banca Carige cite *E\*Trade Fin. Corp. v. Deutsche Bank AG* to argue that a plaintiff's reliance is unreasonable only where " 'it has been put on notice of the existence of material facts which have not been documented' .... No authority holds reliance to be unreasonable unless the plaintiff saw red flags or other circumstances existed that made reliance unquestionably unreasonable." No. 05 Civ. 0902, 2008 WL 2428225, at \*22 (S.D.N.Y. June 13, 2008) (*quoting Lazard Freres,* 108 F.3d at 1542) (internal citations and quotations omitted).

While Plaintiffs correctly articulate the applicable standard—a heightened degree of diligence is required of sophisticated plaintiffs only where red flags or other circumstances existed that made reliance unreasonable—they misapply it to the facts at issue here. The Court finds that Terra and Banca Carige knew or should have known that they were in a position to acquire additional information regarding the alleged misrepresentations. *See Ashland Inc. v. Morgan Stanley,* 700 F.Supp.2d 453, 469 (2d Cir.2010) ("Where the investor knows that he or she is in a position to acquire additional information, but does not inquire, the Second Circuit has found that the duty to exercise minimal diligence renders the investor's reli-

ance unreasonable." (internal quotations omitted)).

First, the full context of the Presentation should have flagged for Terra and Banca Carige that an independent appraisal of the Graph and the Hedging Strategy was warranted. The Presentation provides an explicit risk disclosure (the "Risk Disclosure") addressing the Hedging Strategy and the Graph: "[T]he Fund may experience substantial volatility due to dissentions in the relationship of the municipal bond investments and the hedging instruments." (Baughman Decl., Ex. 5 at 21.) Plaintiffs contend that this cautionary language about the possible future divergence of the taxable and non-taxable rates does not inoculate the plausible marketing power of a misrepresentation about historical performance of those rates. To an untrained eye this may hold true, but the Graph and Risk Disclosure, when viewed in tandem by a sophisticated appraiser, should have resulted in a dissonant picture that looked decisively like a red flag.

The Court finds that Terra and Banca Carige's respective Complaints also reveal additional hints of misstatement that render their alleged reliance unreasonable. Among the reasons Terra and Banca Carige set forth to allege that the Graph fraudulently misrepresented the Hedging Strategy are that Defendants "failed to set forth a standard error for its statistical analysis," (Terra Complaint ¶ 44; Banca Carige Complaint ¶ 40), and relied on municipal bond data that did not correspond, in significant part, with the class of municipal bonds in the Funds.[7] Both of these flaws are readily apparent from the Presentation: there is no standard error indi-

---

7. Plaintiffs allege that the Funds' investment guidelines allowed for a thirty-percent investment in municipal bonds rated less than AAA, but the Graph relies on Thomson Financial municipal bond data for its analysis, which is based solely on AAA municipal bonds. (*See* Terra Complaint ¶ 45; Banca Carige Complaint ¶ 41.).

cated for the Graph, and the data source, which Plaintiffs now maintain fraudulently misrepresented the Funds' bond investments, is indicated below the Graph. Viewing Plaintiffs in light of their sophistication as investors, the Court finds that Terra and Banca Carige cannot now in hindsight rely on these statistical flaws and characterize them as misrepresentations when they were sufficiently on notice of them and their potential implications before investing in the FLNs. Terra and Banca Carige knew or should have known that they were in a position to acquire additional information regarding the statistical analysis portrayed in the Graph, as well as the precise nature of the bond investments in the Funds.

Finally, neither Banca Carige nor Terra allege that the statistical information underpinning the allegedly misleading Graph, or the existence of any credit or liquidity risk, was inaccessible or non-public information. The main premise of Plaintiffs' lawsuit—that an alternative representation of the relationship between taxable and non-taxable rates would not have been misleading—itself demonstrates that the information was public and readily available to them before their entering the securities transactions at issue. Indeed, Terra and Banca Carige now rely on "market research" to claim that Defendants' representations in the Graph were false and misleading. (Terra Complaint ¶ 35; Banca Carige Complaint ¶ 32.) While it is true that the reliance requirement is not "designed to shield perpetrators of fraud by forcing investors to conduct exhaustive research every time they invest money," *Alexander v. Evans*, No. 88 Civ. 5309, 1993 WL 427409, at *16 (S.D.N.Y.1993), it is

also true that this doctrine generally applies to ordinary purchasers of securities, not to sophisticated investors, and especially not to financial entities like Terra and Banca Carige that hold themselves out to the public as experienced investment managers, bankers and brokers, and do conduct exhaustive research in connection with the services they provide to their customers. Here, the Court is not persuaded that Banca Carige and Terra had no duty to conduct an independent appraisal of a statistical representation based on publicly-available interest rates. *See Lazard Freres*, 108 F.3d at 1542 ("Where the representation relates to matters that are not peculiarly within the other party's knowledge and both parties have available the means of ascertaining the truth, New York courts have held that the complaining party should have discovered the facts and that any reliance under such circumstances therefore would be unjustifiable"); *Ashland*, 700 F.Supp.2d at 469–71 (finding that complaint of sophisticated investors provided no indication that information about student loan auction rate securities market was so closely kept so as to render the information inaccessible for the purposes of alleging reasonable reliance); *cf. Abu Dhabi Commercial Bank*, 651 F.Supp.2d at 181 (holding that plaintiffs adequately pleaded reasonable reliance where rating agencies had access to non-public information that even sophisticated investors could not obtain).

Accordingly, the Court finds that Terra and Banca Carige's reliance on the Presentation to be unreasonable as a matter of law and grants Defendants' motion to dismiss Terra and Banca Carige's common law fraud claims.[8]

---

**8.** Terra and Banca Carige further argue that any sophistication they may have as a Norwegian securities firm and Italian bank does not translate to sophistication with respect to the

United States municipal bond market, and thus that they were not under any obligation to access information that may have exposed Defendants' alleged misrepresentations. In

#### b. *Risk Disclosures*

■ The Court next turns to consideration of whether the Municipalities have adequately alleged reliance.

■ The Municipalities, like Terra and Banca Carige, assert that Defendants fraudulently misrepresented the risk of a divergence between the municipal non-taxable and taxable rates, and that they reasonably relied on this misrepresentation in deciding to invest in the FLNs. Defendants contest the reasonableness of the Municipalities' alleged reliance, arguing that they disclaimed reliance, and that extensive risk disclosures in the Presentation bespoke caution. A securities fraud claim must be dismissed as a matter of law where cautionary language expressly warns of or directly relates to the risk that brought about plaintiffs' loss, and thus where no reasonable investor could have been misled about the risk when he invested. *See Halperin v. eBanker USA.com, Inc.*, 295 F.3d 352, 359 (2d Cir.2002); *San Diego County Empls. Ret. Assoc. v. Maounis*, No. 07 Civ. 2618, —— F.Supp.2d ——, ——, 2010 WL 1010012, at *15 (S.D.N.Y. Mar. 15, 2010).

Defendants argue that the Municipalities could not have reasonably relied on the alleged misrepresentations because those statements were directly contradicted by express risk disclosures contained in the Presentation, the FLNs' offering memorandum (the "Offering Memorandum"), and associated prospectuses (the "Prospectuses"). Defendants point to cautionary language in those documents that indicated, among other things, that "investing in alternative investments is speculative" (Baughman Decl., Ex. 5 at 2.); that such investments involve a "high degree of risk" (*id.*, Ex. 6 at 41; Ex. 7 at 45; Ex. 8 at 45), and are suitable only for "sophisticated and experienced investors." (*Id.*, Ex. 5 at 2; Ex. 6 at iii; Ex. 7 at 4). Plaintiffs contend that such general disclaimers are unenforceable here because they do not precisely track the substance of the alleged misrepresentation. *See Caiola v. Citibank, N.A.*, 295 F.3d 312, 330 (2d Cir. 2002); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 930 F.Supp. 68, 72 (S.D.N.Y.1996).

■ As an initial matter, the Court notes that the Terra Complaint relies exclusively on alleged misstatements or omissions in the Presentation. The parties dispute whether certain extrinsic documents relied on by Defendants—the Offering Memoranda and Prospectuses—are properly before the Court for the purposes of this motion to dismiss.

Documents integral to the complaint or that plaintiff relied upon in drafting the complaint may be considered on a Rule 12(b)(6) motion, but "it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document[s] . . . [and] that there exist no disputed issues of fact regarding the relevance of the document[s]." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir.2006).

essence, Plaintiffs argue that sophistication in this context is territorially-limited and issue-specific. However, the duty so circumscribed misstates the applicable standard. While the sophistication of an investor in a specific financial sector may be relevant, Plaintiffs point to no authority that would shield a foreign financial firm from the duty to conduct their own research and analysis of United States-based investments and publicly-available interest rates. In any event, as noted above, Terra and Banca Carige explicitly represented that they had the sophistication and know-how to conduct their own independent appraisal of the FLN investments. As such, the Court finds that their claimed reliance on the Graph and other marketing misrepresentations to be unreasonable as a matter of law.

As to the Prospectuses, the Court is not persuaded that they are properly considered here. There is no indication in the Terra Complaint that the Municipalities relied upon those documents to bring the claims presently before the Court, and Plaintiffs allege that they did not receive any of the Prospectuses prior to making their investment. (*See* Terra Complaint ¶¶ 67, 71.)

Nor is the Court persuaded that the Offering Memoranda are properly considered at this stage. Defendants assert that the Offering Memoranda are integral to the Terra Complaint as a result of the following language in the Presentation:

> If and when an investment opportunity is structured, you must obtain and carefully read the related Offering Memorandum, which will contain the information needed to evaluate the potential investment and provide important disclosures regarding risks, fees and expenses. All information provided herein is qualified in its entirety by the Offering Memorandum and the related subscription agreement.

(Baughman Decl., Ex. 5 at 2.) Yet, it is not clear from the record that the Municipalities received the Offering Memoranda prior to their investment. Drawing all inferences in favor of the Municipalities, the Court is not persuaded that the Offering Memoranda are properly considered at this stage.

Notwithstanding the disclosures in other extrinsic documents, Defendants argue that, as noted above, the Risk Disclosure in the Presentation itself cautioned against the precise volatility that is the subject of this litigation. The Court disagrees.

When marketing the FLNs to unsophisticated investors, such as the Municipalities, cautionary language about the possible future divergence of the taxable and nontaxable rates does not inoculate the plausible marketing power of a misrepresentation about historical performance of those rates. *See Primavera Familienstifung v. Askin*, 130 F.Supp.2d 450, 498 (S.D.N.Y. 2001) ("The PPM risk disclosures did not contradict these more specific, alleged misrepresentations of past and present historical fact."); *Prudential*, 930 F.Supp. at 72 ("The doctrine of bespeaks caution provides no protection to someone who warns his hiking companion to walk slowly because there might be a ditch ahead when he knows with near certainty that the Grand Canyon lies one foot away."). Accordingly, at this stage, the Court finds that the Risk Disclosure does not render the Municipalities' reliance unreasonable as a matter of law.[9]

### c. *Particularity*

■ Defendants argue that the Municipalities have failed to plead their surviving fraud claim with the particularity required by Rule 9(b). Specifically, Defendants argue that Plaintiffs have failed to plead direct reliance on the alleged misrepresentations by failing to identify specific municipal employees who relied on the Presentation, and by acknowledging that Terra may have served as an intermediary to the FLN transactions.

The Court is not persuaded. While a common law fraud claim must meet the particularity requirement of Rule 9(b), *see Muller–Paisner v. TIAA*, 289 Fed.Appx. 461, 463 (2d Cir.2008), a complaint plead-

---

9. For substantially similar reasons, the Court also notes that, even if the Offering Memoranda and Prospectuses relevant to the Municipalities' investments were properly considered at this stage, the general risk disclosures contained therein would be insufficient to render the Municipalities' claimed reliance on the precise misrepresentations alleged here unreasonable as a matter of law. *See Caiola*, 295 F.3d at 330.

ing fraud must only "(1) specify statements that plaintiffs contend were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir.2004) (citation omitted).

Rule 9(b) does not require Plaintiffs to allege direct communication between the Municipalities and Defendants. *See Securities Investor Protection Corp. v. BDO Seidman, LLP*, 222 F.3d 63, 77 (2d Cir. 2000) ("[S]o long as the plaintiff receives the substance of a defendant's misstatements, he or she may establish reliance on that information even if the defendant did not communicate with the plaintiff directly."); *Jay Dees Inc. v. Defense Tech. Sys., Inc.*, No. 05 Civ. 6954, 2008 WL 4501652, at *5 (S.D.N.Y. Sept. 30, 2008) ("Reliance need not result from direct communication from defendant to plaintiff. There is no reason why a misrepresentation to the plaintiff's agent does not suffice.").

Moreover, Rule 9(b) does not require Plaintiffs to identify individual municipal employees who relied on the alleged misrepresentations. Defendants point to *Defer LP v. Raymond James Financial* to argue that Plaintiffs must identify the municipal employees to whom alleged misstatements were made. *See* 654 F.Supp.2d 204, 213–14 (S.D.N.Y.2009). But *Defer* is readily distinguishable. There, the district court found that a plaintiff-investor had stated a securities fraud claim against her investment advisor with particularity (had she been bringing such a claim against her investment advisor), but had failed to directly link the investment advisor's misstatements to any of the corporate defendants named in her complaint. In other words, the plaintiff's complaint failed to attribute the allegedly fraudulent advice she received to the defendants, and had also failed to identify to whom any named

defendant had provided such advice. By contrast, here, Plaintiffs have alleged in detail the Defendants' entities responsible for preparing the misstatements, transmitting the misstatements to Terra, and directing the misstatements to be distributed to the Municipalities. That Plaintiffs do not identify a specific municipal employee who reviewed the Presentation is a red herring and wholly inapposite here. In short, the Municipalities, not any particular municipal employees, are the plaintiffs in this action.

The Court finds that the Municipalities have pled with sufficient particularity the circumstances under which they reasonably relied on the alleged misstatements, and thus have adequately pled reliance under Rule 9(b).

2. *Causation*

The causation element of common law fraud requires that Plaintiffs adequately plead a causal connection between Defendants' alleged misrepresentations and Plaintiffs' alleged losses. *See Emergent Capital*, 343 F.3d at 197. Plaintiffs must show that their damages were foreseeable and were caused by the materialization of the concealed risk. *See Lentell v. Merrill Lynch*, 396 F.3d 161, 173 (2d Cir. 2005); *Castellano v. Young & Rubicam, Inc.*, 257 F.3d 171, 186 (2d Cir.2001).

The Municipalities assert that their investment losses were caused by a risk concealed by the Presentation and its enclosed Graph, namely the likelihood of a divergence of the taxable and non-taxable rates. Defendants argue that the Municipalities have failed to plausibly distinguish losses attributable to the alleged misrepresentations from those resulting from a market-wide credit crisis, and from those losses resulting from Terra's own intervening, wrongful conduct. The Court is not persuaded and finds that Plaintiffs have

plausibly alleged that the divergence of the non-taxable and taxable rates, as well as the materialization of other omitted risks, caused their financial losses.

In cases such as this, where multiple explanations could plausibly surface as the proximate cause of alleged losses, the chain of causation is generally "a matter of proof at trial and not to be decided on a Rule 12(b)(6) motion to dismiss." *Emergent Capital*, 343 F.3d at 197. Among other reasons, to find differently would effectively preclude most, if not all, fraud claims which materialize during a time of economic crisis. Here, the Municipalities do not merely allege that an otherwise intact investment vehicle fell victim, like so many other investments, to the credit and liquidity risk symptomatic of the market collapse. Rather, Plaintiffs allege that Defendants' Hedging Strategy, based on a purportedly near-perfect correlation between taxable and non-taxable rates, was a lemon from the get-go, unable to traverse difficult market terrain despite contrary warranties in the Presentation. Simply put, the Municipalities allege that: the Presentation misrepresented the historical volatility of Defendants' Hedging Strategy in times of market instability, the market destabilized, the taxable and nontaxable rates diverged, and the Municipalities suffered losses.

At the motion to dismiss stage, the Municipalities need not demonstrate that Defendants' alleged misrepresentations caused all or even most of their losses. Rather, they need allege only "facts that would allow a factfinder to ascribe some rough proportion of the whole loss to [the defendant's alleged] misstatements." *Lattanzio v. Deloitte & Touche LLP*, 476 F.3d

147, 158 (2d Cir.2007). The Municipalities plausibly assert that if the correlation between taxable and non-taxable rates had remained as near-perfect as represented in the Graph, some or all of their losses would not have occurred.

Accordingly, the Court finds that the Municipalities have adequately pled causation and denies Defendants' motion to dismiss the Municipalities' common law fraud claim.

## C. NEGLIGENT MISREPRESENTATION

■ Terra and the Municipalities allege that the material misrepresentations underpinning their fraud claims also amount to negligent misrepresentation. To allege a claim of negligent misrepresentation, a plaintiff must plead that "(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the defendant knew that the plaintiff desired the information supplied in the representation for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or detriment." *Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 446 F.Supp.2d 163, 198 (S.D.N.Y.2006) (*citing Hydro Investors, Inc. v. Trafalgar Power, Inc.*, 227 F.3d 8, 20 (2d Cir.2000)).[10]

For the reasons described above, Terra has failed to plausibly allege reasonable reliance on Defendants' alleged misrepresentations. The heightened duty placed on sophisticated investors applies with equal force to the reliance prong of negligent

**10.** Although Defendants argue that New York's Martin Act preempts Plaintiffs' negligent misrepresentation claim, the Court disagrees. *See Anwar v. Fairfield Greenwich Ltd.*, No. 09 Civ. 0118, 728 F.Supp.2d 354, 372, 2010 WL 3022848, at *17 (S.D.N.Y. July 29, 2010) (finding that the Martin Act does not preempt common law claims).

misrepresentation. *See Century Pac., Inc. v. Hilton Hotels Corp.*, 354 Fed.Appx. 496, 498 (2d Cir.2009) (finding reliance by sophisticated party unreasonable for the purposes of a negligent misrepresentation claim). Accordingly, the Court grants Defendants' motion to dismiss Terra's negligent misrepresentation claim.

The Court, however, finds that the Municipalities plausibly allege a negligent misrepresentation claim. Although it does not appear from the face of the Terra Complaint that Defendants were in contractual privity with the Municipalities, Plaintiffs have alleged sufficient facts to support a reasonable inference that Defendants nevertheless owed them a duty of care. To show that a defendant not in privity with a plaintiff nevertheless owes a duty to give that plaintiff accurate information, the plaintiff must show that there is "(1) an awareness by the maker of the statement that it is to be used for a particular purpose; (2) reliance by a known party on the statement in furtherance of that purpose; and (3) some conduct by the maker of the statement linking it to the relying party and evincing its understanding of that reliance." *Credit Alliance Corp. v. Arthur Andersen & Co.*, 65 N.Y.2d 536, 493 N.Y.S.2d 435, 483 N.E.2d 110, 118 (1985).

In addition to the allegations of reliance described above, the Municipalities allege that Defendants insisted that Terra provide them the Presentation for the express purpose of marketing the FLN investments. (*See* Terra Complaint ¶ 30.) The Terra Complaint thus plausibly alleges (1) that Defendants were aware that the Presentation was to be used for the purpose of marketing FLN investments; and (2) linking conduct by Defendants evincing their understanding that the Municipalities would rely on the Presentation to evaluate the prospect of FLN investments.

Accordingly, the Court denies Defendants' motion to dismiss the Municipalities' negligent misrepresentation claim.

## IV. *LEAVE TO REPLEAD*

Defendants have asked the Court to deny Plaintiffs leave to replead their claims. A court "should freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). Nevertheless, "it is within the sound discretion of the court whether to grant leave to amend." *John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir.1994) (*citing Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)).

For the reasons discussed above, the Court has determined that Terra and Banca Carige cannot sustain plausible fraud or negligent misrepresentation claims based on Defendants' alleged misrepresentations in the Presentation. It is therefore possible that a repleading would be futile if it were based upon the same type of alleged misrepresentations or omissions. Nonetheless, the Court will grant leave to replead upon a request by Terra or Banca Carige showing that such a repleading would not be futile. Plaintiffs may submit any such request within ten days of this Order.

## V. *ORDER*

For the reasons discussed above, it is hereby

**ORDERED** that the motion (Docket No. 33) of defendants Citigroup, Inc., Citigroup Global Markets, Inc., Citigroup Alternative Investments LLC, and Citigroup Financial Products, Inc. (collectively, "Defendants") to dismiss the amended complaint (the "Amended Complaint") of Terra Securities ASA Konkursbo ("Terra") and the Norwegian municipalities of Bremanger, Hattfjelldal, Hemnes, Kvinesdal, Nar-

vik, Rana and Vik is GRANTED in part and DENIED in part; and it is further

**ORDERED** that the motion (Docket No. 39) of Defendants to dismiss the complaint of Banca Carige S.P.A.—Cassa Di Risparmio Di Genova E Imperia, Carige Vita Nuova S.P.A., and Carige Assicurazioni S.P.A. (collectively, "Banca Carige") is GRANTED; and it is further

**ORDERED** that Terra and Banca Carige may submit requests for leave to amend their complaints within ten days of this Order. Such requests must make a plausible showing that repleading would not be futile; and it is finally

**ORDERED** that Defendants are directed to answer the Amended Complaint, and the parties are to confer and develop a proposed Case Management Plan to be submitted to the Court at the initial conference on this case, which shall be held on September 17, 2010, at 10:45 a.m.

**SO ORDERED.**